954 So.2d 920 (2007)
Sherry L. ADKINS, Plaintiff-Appellant,
v.
Clay D. ADKINS, Defendant-Appellee.
No. 42,076-CA.
Court of Appeal of Louisiana, Second Circuit.
April 11, 2007.
*921 David L. White, Bossier City, for Appellant.
James M. Johnson, for Appellee.
Before CARAWAY, LOLLEY and SEXTON (Pro Tempore), JJ.
CARAWAY, J.
This case presents the question of the wife's justification for leaving the marital home for alleged cruel treatment in a situation where admitted incompatibility and friction existed between the spouses. The question is pertinent for the wife's claim for permanent spousal support since our law requires the recipient of support to be "free from fault" in the breakup of the marriage. The trial court denied support to the wife finding that her leaving the home amounted to abandonment. With the claim for cruel treatment resting almost exclusively on the conflicting testimony of the spouses, the trial court's crediting of the husband's account of the marriage was not an abuse of its discretion, and the finding of abandonment and fault may not be overturned. We affirm.

Facts
Clay D. Adkins and Sherry L. Adkins Palmer married on June 30, 2001, and established their matrimonial domicile in Webster Parish. They separated on May 29, 2005, after an alleged verbal altercation *922 which resulted in the wife calling the police. Thereafter, Sherry established her residence in Bossier Parish, where she is a self-employed personal trainer. No children were born of the marriage, but each has children from their respective prior marriages.[1]
The court initially awarded Sherry interim spousal support. The trial court rendered a judgment of divorce dissolving the marriage in April 2006, but reserved the issue of Sherry's entitlement to spousal support for a June trial. At the close of the two-day trial, the matter was taken under advisement.
In its written ruling, the trial court denied Sherry's claim on the fault-based ground of abandonment. It found no proof of adultery by Clay which would give Sherry lawful cause for leaving the marital home. It found Sherry was not free from fault in the dissolution of the marriage. Sherry appeals the judgment.

Discussion
Sherry argues the trial court erred in denying her final spousal support and crediting Clay's version of the events leading to the breakup over hers. She also assigns as error the trial court's failure to properly weigh the testimony of two counselors, Martin Miller, who counseled them both during the marriage, and Glenda Lawson, Sherry's individual counselor.
Final periodic support may be awarded to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay. La. C.C. arts. 111 and 112. Thus, a spouse seeking such support must be without fault, and the burden of proof is upon the claimant. Mayes v. Mayes, 98-2228 (La. App. 1st Cir.11/5/99), 743 So.2d 1257. The statutory law does not define fault which would prevent an award of permanent alimony and legal fault has been determined according to jurisprudential criteria. See Allen v. Allen, 94-1090 (La.12/12/94), 648 So.2d 359. Fault continues to mean misconduct that rises to the level of one of the previously existing fault grounds for legal separation which previously existed in our law when the action for separation of the spouses was a part of our law. Revision Comment (c) of 1997, La. C.C. art. 111 and citations therein.
The 1990 revisions of the codal provisions pertaining to the dissolution of marriage repealed former Civil Code Article 138 (grounds for separation from bed and board). Former La. C.C. art. 138 (1870). The three fault grounds implicated in this case listed in that article remain pertinent to the issue of fault for permanent spousal support and provide as follows:
1. In case of adultery on the part of the other spouse;
* * *
3. On account of habitual intemperance of one of the married persons, or excesses, cruel treatment, or outrages of one of them toward the other, if such habitual intemperance, or such ill-treatment is of such a nature as to render their living together insupportable;
* * *
5. Of the abandonment of the husband by his wife or the wife by her husband;
* * *
Former Civil Code Article 143 further defined the elements necessary to prove abandonment, as follows:

*923 1. the party has withdrawn from the common dwelling;
2. the party left without lawful cause; and
3. the party has constantly refused to return to live with the other.
Former La. C.C. art. 143 (1870); Skannal v. Skannal, 25,467 (La.App.2d Cir.1/19/94), 631 So.2d 558, writ denied, 94-697 (La.5/13/94), 637 So.2d 1067.
Lawful cause which justifies the withdrawal from the common dwelling has been held by this court to be that which is substantially equivalent to a cause giving the withdrawing spouse grounds for a separation under former Civil Code Article 138. Skannal, supra. A continued pattern of mental harassment, nagging and griping by one spouse directed at the other can constitute cruel treatment. Jenkins v. Jenkins, 441 So.2d 507 (La.App. 2d Cir. 1983), writ denied, 444 So.2d 1223 (La. 1984). Mere friction or dissatisfaction in the relationship or incompatibility between the spouses, however intense, is not enough to constitute cruel treatment or lawful cause for abandonment. Skannal, supra; Jenkins, supra. Thus, where one spouse unilaterally decides to leave the marital domicile, and subsequently refuses to return, the separation is either for lawful cause or it is abandonment.
Another element necessary for proof of abandonment is that the abandoned spouse desired the other spouse's return. Von Bechman v. Von Bechman, 386 So.2d 910 (La.1980); Mayes, supra; Jenkins, supra; Donna G.R. v. James B.R., 39,005 (La.App.2d Cir.7/2/04), 877 So.2d 1164, writ denied, 04-1987 (La.9/3/04), 882 So.2d 550 (eviction from family home attributable to husband, culminating in wife and children's relocation and subsequent refusal to join husband in new dwelling does not constitute abandonment precluding award of final support).
A party is not deprived of alimony due to a reasonable justifiable response to the other spouse's initial acts. A spouse who perceives infidelity may become quarrelsome or hostile. Such a reasonable reaction does not constitute legal fault. The suspicion of adultery causes the breakup and not the reaction. A spouse who reacts should not be precluded from receiving alimony solely because of his or her own response. Jones v. Jones, 35,502, 35,503 (La.App.2d Cir.12/5/01), 804 So.2d 161.
Domestic relations issues largely turn on evaluations of witness credibility, and therefore, the trial judge has much discretion in such matters. Skannal, supra. Fault is a factual finding that will not be disturbed unless it is clearly wrong. Id. "Uncorroborated testimony of one spouse as to the other spouse's alleged acts, contradicted by the accused spouse, where the credibility of neither is attacked, will not constitute a preponderance of the evidence . . . absent an ability of the trial court to determine the truth of what occurred by weighing credibility." Jenkins, supra.
In her testimony, Sherry described Clay's treatment of her during their marriage as mental and emotional abuse that began within a couple of months of the marriage in May 2001. She admitted that he never struck her, but complained of instances of verbal abuse consisting of Clay yelling and screaming at her, calling her names and accusing her of being "crazy" and unfaithful. Sherry explained that Clay would never act abusively in front of the boys and that she tried to hide these incidents from them. She remembered particular occasions when Clay took her car keys away and when she slept in the boys' rooms or the bathroom to "get away" from him.
*924 Sherry denied ever having a "jealousy problem," but claimed that Clay was constantly accusing her of infidelity. Sherry's allegations of Clay's infidelity included an incident in which she discovered Clay outdoors on his cell phone in the middle of the night, as well as finding make-up on his clothes after he returned from a business trip. After Sherry left the home and moved into an apartment in Bossier, Clay allegedly stalked Sherry and, on one occasion, forced her to have sex with him in her apartment. For her part, Sherry acknowledged an incident in which the clothes iron she was using was thrown at a wall, damaging it, but she denied that she tried to hit Clay with the iron. Finally, Sherry testified that she thought Clay wanted her back. She stated that she would have returned if he had gotten the help he needed, and she admitted that she still loved Clay.
On the other hand, Clay testified that he did not want a divorce. He attributed their problems to Sherry's constant accusations of infidelity and their arguments over his son, Logan. Sherry's insecurity and distrust of him led her to search his phone records every month and try to identify all the calls he made. Clay denied any infidelity but admitted that they argued, and that he had screamed and yelled at her. However, he was willing to go to counseling and basically do whatever Sherry wanted in order to save the marriage. He acknowledged that during the final two to three months of the marriage, things were going badly and blamed their problems on trust issues and his son, Logan. Clay testified he tried to get Sherry to return to the marriage but stopped after receiving a restraining order shortly before Sherry filed for divorce.
The parties communicated with each other in person, on the phone and via e-mail after their separation on May 29, 2005. Both of them disputed the meaning of various e-mail content and greeting cards submitted into evidence to illustrate the pattern of their marital discord.
Although Sherry's son, Shane, and other persons who knew the parties testified at trial, their testimony did not reveal direct evidence of the parties' problems which would corroborate either spouse's view of the marriage. Thus, after hearing these two conflicting accounts of the marital discord, the trial court was faced with a credibility determination and expressly found in its written ruling that Clay's testimony was more credible. Accepting Clay's account of the marital discord, the trial court could find that Clay's actions did not amount to cruel treatment so as to provide lawful cause for Sherry's abandonment of the marital domicile.
In reaching this conclusion, we also reject Sherry's argument that the testimony of two marriage counselors, which was not acknowledged in the trial court's written ruling, tended to corroborate her account of the status of the marriage demonstrating lawful cause for her leaving Clay. The testimony of the therapist, Martin Miller, who had consulted with both parties since 2002, reveals no admissions or actions by Clay in the counseling sessions that could independently establish such cruelty that would give Sherry lawful cause for leaving Clay. In fact, the parties remained together during the extended period of Miller's counseling which ended ten months before their separation. Miller did not recall making a recommendation for separation because of the reported conduct by Clay. The other therapist, Glenda Lawson, counseled only Sherry during the final month before the separation. Thus, Sherry's one-sided reports of the parties' conflict to Lawson could be discounted by the trial court.
*925 Ultimately, the trial court as the finder-of-fact, not the marriage counselor or for that matter, the appellate court, weighs the two conflicting accounts of spouses with admitted incompatibility to determine whether the case demonstrates lawful cause for one spouse to leave or instead, abandonment. This particular situation of alleged abandonment with incompatibility or irreconcilable differences between the spouses has given our courts much difficulty in the search for "lawful cause." Skannal, supra; Mercer v. Mercer, 95-1257 (La.App. 3d Cir.4/3/96), 671 So.2d 937; Durand v. Willis, 470 So.2d 947 (La.App. 3d Cir.1985), writ denied, 477 So.2d 98 (La.1985); Lyons v. Lyons, 33,237 (La.App.2d Cir.10/10/00), 768 So.2d 853, writ denied, 00-3089 (La.1/5/01), 778 So.2d 1142. The policies of our fault-free divorce laws and the fault-based spousal support scheme are in tension in this setting producing difficult cases. Nevertheless, the trial court's ruling is supported by the jurisprudence involving similar marital strife and presents no abuse of the discretion given the trial court for the resolution of this domestic relations dispute.

Conclusion
For the foregoing reasons, the trial court's denial of permanent spousal support is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] Sherry has four sons, three of whom lived with the parties during the marriage; the father of these children is deceased. Clay's child from his prior marriage alternates living six months with Clay and six months with his mother.