GARRETT, J.
_JjThe plaintiff, Tony Randall King (“Tony”), appeals from a trial court judgment ordering him to pay the defendant, Tamra Hudson King (“Tamra”), final periodic spousal support in the amount of $500 per month. For the following reasons, we amend in part, and as amended, affirm the trial court judgment.
FACTS
The parties were married on August 5, *944 2009, and were in their late 40s.[1] Both parties had been married previously and had children from prior marriages. They worked for a company called Ergon when they married. Tamra contended that Tony encouraged her to resign when they bought a house next to Tony’s father in Gilbert, Louisiana, and moved there.
Tony was employed as a chief engineer on a riverboat on the Mississippi River. His schedule required him to work on the boat for 30 days and then be home for 15 days. Tamra complained that Tony was away from home too much and urged him to find work closer to home. Tony refused because his job paid well and had good benefits.
In late 2010, Tamra, unfortunately, was diagnosed with rectal cancer. Her treatment included weekly chemotherapy and radiation treatments five days per | ¡week. Many complications arose. She eventually underwent numerous surgeries.[2] She currently suffers from bowel incontinence which makes it impossible to work outside the home. She hoped in the future to have additional surgery to correct the bowel problem, but her doctor advised she had not healed properly for the surgery at the time of the hearing.
Tony’s sister, Patsy King, went with Tamra to some of her treatments. According to Ms. King, Tamra said that she needed a “rent-a-husband” because Tony was gone so much and Tamra was in contact with a former boyfriend, “Bill,” who had offered to take her to some of her medical appointments. When the comments about Bill were relayed to Tony, he confronted Tamra and accused her of having an affair.[3] Tony claims Tamra admitted visiting Bill while Tony was away. Tamra maintained that she had remained friends with Bill, who was also a friend of her family, but was not having an affair.
Tamra claimed that in late March 2011, Tony confronted her about his |..¡allegations regarding Bill. At the same time, he also presented her with an affidavit he wanted her to sign in order to obtain an immediate divorce. The affidavit stated that Tamra was the defendant in the “foregoing Rule for Divorce,” that she had been furnished with a copy of the rule and waived formal citation, service of process, all legal delays, notice of trial, and appearance at trial. The affidavit stated that Tamra agreed that a judgment on the rule could be entered against her on the day of the hearing on the rule and that she and Tony had not lived together since August 12, 2010. She refused to sign the affidavit because it was untrue. In addition to being untruthful, the affidavit was particularly hurtful because the date in the document, August 12, was Tamra’s birthday. Tony denied giving her the affidavit. However, Tamra produced the document at trial and it was introduced into evidence. She also contended that Tony took her debit card and checks and transferred money out of a checking account, leaving her without any means of support. Tamra also asserted *945 that Tony disconnected the television service from the exterior of their house and removed the AirCard out of the computer, denying her Internet access. According to Tamra, Tony’s accusations, actions and conduct were making it impossible for her to remain at the family home.
After the confrontation, Tony left and only returned home late at night. On |4March 28, Tamra drove herself to a doctor’s appointment. After she returned, her children helped her move some of her things out of the house. She went to Vicksburg, Mississippi, with her children. When Tony went home the next morning, he discovered that Tamra had moved out. She never returned to live at the house and he never asked her to return. Tamra had to live with relatives for a while and later moved into a trailer in Vicksburg.
On May 12, 2011, Tony filed for a divorce under La. C.C. art. 102. Tamra filed an answer and reconventional demand asking that Tony maintain her health, dental, and prescription coverage through his employment. She also sought interim and final periodic spousal support. The parties entered into a stipulated judgment whereby Tony was to pay Tamra interim spousal support in the amount of $1,000 per month. This amount was later reduced to $750 per month and Tony was ordered to pay an additional $250 a month to satisfy an ar-rearage of $3,000. In March 2013, Tony was found to be in arrears in the amount of $10,100. He was ordered to pay $750 in interim spousal support, in addition to $500 per month to decrease the arrearage. An income assignment order was issued to Tony’s employer. Tony was also found in contempt of court for failure to pay the support judgment.
In December 2012, Tony terminated Tamra’s health insurance coverage. He |sclaimed he did not intend to terminate her coverage. However, as a result, Tamra incurred some uncovered medical expenses and other treatment was cancelled or postponed due to the lapse in insurance coverage. Tamra undertook steps to qualify for Social Security disability benefits and Medicare. At some point, Tony filed for bankruptcy.
The parties were eventually divorced on February 17, 2013. On April 1, 2013, the trial court held a hearing on the issues of fault and entitlement to final periodic spousal support. The trial court found that Tamra was not at legal fault in the breakup of the marriage and awarded her final periodic spousal support in the amount of $500 per month, to be collected through an income assignment order. In lengthy and well-reasoned oral reasons for its decision, the trial court stated that, in making an award of final spousal support, when a spouse has been free from fault prior to the filing of the proceeding to terminate the marriage and is in need of support, the court may allow that spouse, out of the income and means of the other spouse, final periodic spousal support which shall not exceed one-third of the net income of the obligor’s income. The trial court found that Tony became aloof after Tamra’s cancer diagnosis; accused her of having an affair; presented Tamra with an affidavit to obtain a divorce; cut off the television service; and took steps to remove her from a checking account, ATM card, and safe deposit box. The trial court | finoted that it was required to make a credibility determination between the testimony of Tony and Tamra, as their testimony differed in many areas. The trial court stated it found Tamra to be credible because of the divorce affidavit she produced in court corroborating her version of what occurred. According to the trial court, the presentation of the untrue affidavit to obtain a divorce also demonstrated that Tony had decided to terminate the *946 marriage prior to March 28, 2011. Tony’s actions made it impossible for Tamra to continue to live in the matrimonial domicile. The trial court found that Tamra left with lawful cause and was not at fault in the breakup of the marriage.
In setting the amount of the final periodic spousal support, the trial court considered the factors set forth in La. C.C. art. 112. The trial court determined that Tamra’s expenses exceeded her income. The trial court determined that Tamra’s monthly income consisted of $1,263, the amount of her Social Security disability check. The trial court found that Tony made a gross salary of $70,000 per year and even after bankruptcy payments, he had sufficient disposable income from which he could pay final spousal support. The trial court noted that Tony had “tremendous expenses.” The trial court considered the age of the parties, the short duration of the marriage, and the fact that both have health concerns. The court terminated the interim spousal support and ordered Tony to pay Tamra $500 per 17month in final periodic spousal support beginning on April 1, 2013, as well as $500 per month until his arrearage is satisfied. The court stated that the spousal support award would be for an indefinite period for now, but noted that the court would consider a motion to reduce or terminate the award in the event that Tamra is able to return to work. The judgment was signed on May 21, 2013.
On appeal, Tony argues that the trial court erred in finding that Tamra was free from fault in the dissolution of the marriage; in finding that she was in necessitous circumstances, or alternatively in making an excessive award of $500 per month; and in ordering Tony to pay an amount which is more than one-third of his net income.
FREEDOM FROM FAULT
Tony argues that Tamra was not free from fault in the termination of the marriage. Tony claims that when he confronted Tamra regarding an alleged affair, she left without lawful cause, cut off the electricity to the house, withdrew money from a joint bank account, and changed his cell phone plan, causing him to incur a large cell phone bill. Tony contends that Tamra abandoned him and did not have lawful cause to leave. This argument is without merit.
Legal Principles
IsLa. C.C. art. Ill provides that, in a proceeding for divorce or thereafter, the court may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage.
Fault is a threshold issue in a claim for spousal support. Hunter v. Hunter, 44,703 (La.App.2d Cir.9/30/09), 21 So.3d 1032. A spouse seeking final periodic spousal support must be without fault and the burden of proof is upon the claimant. Adkins v. Adkins, 42,076 (La.App.2d Cir.4/11/07), 954 So.2d 920. Since the statutory law no longer specifies the type of fault which would constitute grounds to deny final periodic spousal support, legal fault must be determined according to the prior jurisprudential criteria. See Allen v. Allen, 94-1090 (La.12/12/94), 648 So.2d 359; Hunter v. Hunter, supra.
The word “fault” contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties and responsibilities. A spouse is not deprived of spousal support after divorce simply because he or she was not totally blameless in the marital discord. Hunter v. Hunter, supra. Only misconduct of a serious nature, providing an independent contributory or proximate *947 cause of the breakup, equates to legal fault. Hunter v. Hunter, supra. Legal fault includes, but is not limited to, habitual intemperance or excesses, cruel treatment or outrages and abandonment. Hunter v. Hunter, supra; Roan v. Roan, 38,383 (La.App.2d Cir.4/14/04), 870 So.2d 626. See also Martin v. Martin, 45,007 (La.App.2d Cir.3/3/10), 32 So.3d 319; Jenkins v. Jenkins, 38,873 (La.App.2d Cir.9/22/04), 882 So.2d 705. Mere bickering and fussing do not constitute cruel treatment for purposes of denying alimony. Hunter v. Hunter, supra.
The necessary elements to prove abandonment are that the party has withdrawn from the common dwelling, without lawful cause, and has constantly refused to return to live with the other. See Adkins v. Adkins, supra; Hutson v. Hutson, 39,901 (La.App.2d Cir.8/9/05), 908 So.2d 1231. Lawful cause which justifies the withdrawal from the common dwelling has been held by this court to be that which is substantially equivalent to a cause giving the withdrawing spouse grounds for a separation under former La. C.C. art. 138.[4] Adkins v. Adkins, supra; Skannal v. Skannal, 631 So.2d 558 (La.App. 2d Cir.1994), writ denied, 637 So.2d 1067 (La.1994). A continued pattern of mental harassment, nagging, and griping by one spouse directed at the other can constitute cruel treatment. Mere friction or dissatisfaction in the relationship or incompatibility between the spouses, however intense, is not enough to constitute cruel treatment or lawful cause for abandonment. Thus, where one spouse unilaterally decides to leave the matrimonial domicile, and subsequently refuses to return, the separation is either for lawful cause or it is abandonment. Adkins v. Adkins, supra. In proving a constant refusal to return to live with the other spouse, the abandoned spouse must show that he or she desired the other spouse’s return. See Von Beckman v. Von Beckman, 386 So.2d 910 (La.1980); Adkins v. Adkins, supra; Hutson v. Hutson, supra; Ashworth v. Ashworth, 2011-1270 (La.App. 3d Cir.3/7/12), 86 So.3d 134.
Domestic relations issues such as the determination of entitlement to spousal support largely turn on evaluations of witness credibility. Jones v. Jones, 38,790 (La.App.2d Cir.6/25/04), 877 So.2d 1061. The fact finder has the discretion to *948 accept or reject, in whole or in part, the testimony of any witness. Hunter v. Hunter, supra. The trial court has vast discretion in matters regarding determination of fault for purposes of determining entitlement to final periodic support. The trial judge’s finding of fact on the issue of fault will not be disturbed unless it is manifestly erroneous or clearly wrong. Jones v. Jones, supra; Carr v. Carr, 33,167 (La.App.2d Cir.4/5/00), 756 So.2d 639; Hunter v. Hunter, supra.
Discussion
Tony argues that the trial court erred in finding that Tamra had lawful cause to leave the matrimonial domicile. He claims her abandonment constituted fault which precludes the award of final periodic spousal support.
Tony testified that Tamra frequently requested that he quit his job to be at home more, but he admitted that these discussions were “normal, everyday little comments and stuff.” Tony also related an earlier incident where Tamra had allegedly left the matrimonial domicile. Tony contended that at one point, while he was at home, Tamra went to Vicksburg, Mississippi, to visit family and look for a job. According to Tamra, she was not looking for a job, but had gone to Vicksburg to take her mother to a medical appointment. After a few days, Tamra returned to the family home. Tony said that Tamra never treated him cruelly during the marriage. He also stated at one point that he had no reason to suspect any infidelity.
| ^Tony stated that he did not know if Tamra was involved with Bill. He testified that prior to their confrontation regarding his suspicion that Tamra was having an affair with Bill, the parties hardly ever argued and he “thought everything was good.” During the confrontation over his suspicions about Bill, Tony told Tamra “if she’s going to be running back and forth to Bill, she just needed to be moving.” Tony claimed that, not only did Tamra leave the marital domicile and take furniture and household items with her, she shut off the electricity to the house, withdrew an income tax refund from the bank, and changed his cell phone plan causing him to incur a bill of $1,500. He also accused Tamra of forging his name to a form to change the beneficiary of his life insurance policy from his daughter to herself. Tony acknowledged that after his separation from Tamra, one of his ex-wives, Debra, moved into the matrimonial domicile. At the time of the hearing, Tony was staying at the residence of another ex-wife, Jeannine.
Tamra claimed that when she was diagnosed with cancer, she sent Tony a text message. Shortly after her diagnosis, Tamra asked Tony to return home to be with her during her cancer treatment. According to Tamra, after this request, Tony did not contact her for two weeks, even though she claimed that he contacted other members of his family. In February 2011, while Tony was at home, Tamra became 11svery ill from her cancer treatment and was hospitalized for several days. Tamra claimed that Tony did not spend much time with her at the hospital.
Regarding Bill, Tamra stated that he was a family friend whom she had dated briefly prior to her marriage to Tony. She said she was no longer seeing Bill. After her cancer diagnosis, she acknowledged that she talked to Bill on the telephone about once a week, as he was concerned about her health. Tamra pointed out that Tony accused her of having an affair with Bill during the time she was undergoing chemotherapy and radiation treatment for cancer. Tamra testified that she thought Tony wanted to end the marriage because of her illness.
*949 According to Tamra, Tony confronted her regarding his suspicions about Bill on Friday, March 25, 2011. She said Tony had the divorce affidavit with him at that time. They discussed his intention to eliminate her access to a bank account and he gave her $60. Tamra stated that she told Tony she was going to the bank to get her things out of their safe deposit box. She claimed that he wanted to take her to the bank to make sure she did not get any money out of the checking account. Tamra testified that while she was at the bank, she asked a bank employee if her name had been removed from their joint checking account. The employee told her it had not, but stated Tony was working on it. According to Tamra, Tony transferred the money in the account to an account that was only in his name.
| uAfter the confrontation, Tony left the residence during the day. On Monday, March 28, 2011, Tamra stated that she was preparing to go to a doctor’s appointment when she noticed that Tony’s bags were gone. When she returned from her appointment, she discovered that the television service had been disconnected and the AirCard was gone from the computer, eliminating her Internet access. She claimed that the debit card and checks from a bank account had been taken out of her purse. Tony denied these claims. Tamra testified that Tony’s actions made it impossible to remain at the matrimonial domicile. After she left, he never asked her to return, a fact that Tony acknowledged.
Tamra testified that the electricity was in her name and she shut down the account after she left. She denied changing Tony’s cell phone plan. Documentation concerning the cell phone bill and any alleged changes to Tony’s cell phone plan was discussed at the hearing but was not introduced into evidence. Tamra also denied changing the beneficiary on Tony’s life insurance policy. The document was executed on February 21, 2011, when Tony was at home. Other than Tony’s self-serving testimony, no proof of this accusation was presented at trial. When the income tax refund was deposited in April 2011, Tamra was able to transfer the funds to a credit union account and she withdrew a portion of the funds to have money to live on. Tamra stated that from March 2011 until July |152011, when she received her first interim spousal support payment, the income tax refund was the only money she had to live on.
In this matter, there is no dispute that Tamra withdrew from the common dwelling. The trial court found that she had lawful cause to leave. As noted above, the trial court has immense discretion in matters regarding the determination of fault for purposes of determining entitlement to final periodic spousal support as well as discretion to accept or reject, in whole or in part, the testimony of any witness. The trial court in this matter made credibility determinations regarding the testimony of Tony and Tamra and found Tamra to be credible. We do not find that the trial court’s credibility determinations or findings of fact are manifestly erroneous, clearly wrong, or an abuse of the discretion afforded the trial court in these matters. The facts show that Tony was not very supportive of Tamra following her cancer diagnosis. He did not communicate with her. Tony never proved that an adulterous relationship existed. The false affidavit shows that Tony had taken steps to attempt to end the marriage. He also took action to eliminate her access to a bank account, television service, and Internet service at the matrimonial domicile. All these facts made their living together insupportable and all occurred while Tamra was undergoing difficult medical treatment. We observe that La. C.C. art. 98 *950 provides that married persons owe each other the duties of fidelity, support, 11fiand assistance. While the parties were married, Tony’s conduct was violative of the duties imposed by this article.
The record fully supports the trial court’s finding that Tony’s conduct and treatment of Tamra gave her lawful cause to leave. Although the trial court found that Tamra constantly refused to return, it did not actually consider the legal requirements of the third element of abandonment, that the party has constantly refused to return to live with the other. As set forth above, a necessary element of proof for a claim of abandonment is that the abandoned spouse desired the other spouse’s return. After Tamra left on March 28, 2011, Tony acknowledged that he never requested that she return.
Tony’s actions regarding Tamra, coupled with his desire that Tamra leave and his failure to show that he desired her return, demonstrate that Tamra had lawful cause to leave, precluding a finding that she abandoned Tony. See Von Bechman v. Von Bechman, supra; Hutson v. Hutson, supra. Accordingly, we affirm that portion of the trial court judgment finding Tamra to be free from fault.
NECESSITOUS CIRCUMSTANCES AND EXCESSIVE AWARD
Tony argues that the trial court erred in finding that Tamra is in necessitous circumstances, or in the alternative, that an award of $500 per month was 117excessive. We find that Tamra proved her need for an award of permanent periodic spousal support. However, the trial court erred in making an excessive award.
Legal Principles
In determining final periodic spousal support, La. C.C. art. 112 provides:
A. When a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph B of this Article.
B. The court shall consider all relevant factors in determining the amount and duration of final support. Those factors may include:
(1) The income and means of the parties, including the liquidity of such means.
(2) The financial obligations of the parties.
(3) The earning capacity of the parties.
(4) The effect of custody of children upon a party’s earning capacity.
(5) The time necessary for the claimant to acquire appropriate education, training, or employment.
(6) The health and age of the parties.
(7) The duration of the marriage.
(8) The tax consequences to either or both parties.
C. The sum awarded under this Article shall not exceed one-third of the obli-gor’s net income.
11SA spouse may be awarded final periodic support when he or she has not been at fault and is need of support, based on the needs of that party and the ability of the other party to pay. A claimant spouse does not need to prove necessitous circumstances. Anderson v. Anderson, 48,027 (La.App.2d Cir.5/15/13), 117 So.3d 208. Final periodic spousal support, formerly known as permanent alimony, is limited to an amount sufficient for maintenance as opposed to continuing an accustomed style of living. The court shall consider all relevant factors in determining the amount and duration of final support. La. C.C. art. 112; Anderson v. Anderson, supra.
*951 Discussion
Tony contends that for a spouse to receive final periodic spousal support, he or she must be in need and the award must be limited to maintenance as opposed to maintaining an accustomed style of living. He argues that Tamra receives $1,894 per month, an amount which includes $681 in Social Security benefits Tamra’s daughter received, in addition to the $1,263 that Tamra receives in Social Security disability benefits. Tony contends that the trial court erred in excluding from Tamra’s income the $631 paid monthly to her daughter because that amount did not terminate until May 1, 2013, one month after the hearing. Tony also urges that the trial court should not have considered Tamra’s television and Internet expenses | ^because these are not necessary expenses. He also asserts that the trial court should not have considered Tamra’s future expenses for Medicare and an amount for miscellaneous expenses as these would not arise until a month after the court hearing.
The record shows that Tamra established at the hearing that her daughter’s Social Security benefits were terminating in early May 2013, since her daughter was turning 18. Also, Tamra’s Medicare coverage would begin on May 1, 2013, and she would be required to pay $99 per month for Medicare “Part B” coverage and $50 to $100 per month for a supplement for prescription coverage. Tamra testified that all these events would definitely occur one month after the hearing. The trial court accepted her testimony. These factors were not speculative and the trial court did not abuse its discretion in determining that Tamra’s monthly income would only consist of the $1,263 in Social Security disability benefits, and that she would be in-eurring expenses for Medicare and for a prescription supplement. The trial court concluded that Tamra’s expenses for Medicare and the prescription supplement would cost between $150 and $200 per month. These are appropriate amounts.[5]-
|2nWe also find that the trial court did not err in considering Tamra’s Internet and television services as necessary expenses under the circumstances of this case. As stated in Anderson v. Anderson, supra, La. C.C. art. 112 no longer requires proof of necessitous circumstances, but only proof of need. The operative question is whether the trial court abused its discretion in finding need. Anderson v. Anderson, supra. See also Patton v. Patton, 37,401, 37,402 (La.App.2d Cir.9/24/03), 856 So.2d 56. In Anderson, the spouse claiming that television and Internet expenses were necessary was suffering from anxiety and depression. This court agreed with the claimant spouse even though she was able to work outside the home. In this case, Tamra is seriously ill and not able to leave her house often. She testified that she considered Internet and television services to be necessary expenses. Under these circumstances, we find that the trial court did not err in considering these expenses as needs.
Tony next argues that the trial court erred in allowing Tamra $100 in miscellaneous expenses because this item was speculative. To the contrary, Tamra testified that this item was included in her list of expenses to cover vehicle maintenance. Transportation expenses are considered one of the basic necessities of life. See Jones v. Jones, supra.
| ¾1 Based upon this record, Tamra has a monthly income of $1,263 and allow *952 able monthly expenses of $1,684.58.[6] Tamra’s expenses exceed her income by $421.58 per month. In ordering Tony to pay Tamra final periodic spousal support in the amount of $500 per month, the trial court’s figure was slightly higher than the amount actually established at the hearing. We amend the trial court award to require Tony to pay Tamra final periodic spousal support in the amount of $421.58 per month.
AWARD IN EXCESS OF ONE-THIRD OF OBLIGOR’S NET INCOME
Tony contends that the trial court award of $500 per month in final periodic spousal support exceeds one-third of his net income, contrary to La. C.C. art. 112(C). This argument is without merit.
Discussion
La. C.C. art. 112 specifies that a spousal support award shall not exceed one-third of the obligor’s net income. The code article does not define the term la“net income.” The record shows that after payroll deductions for taxes, insurance, 401k retirement account and other items, Tony has a net monthly income of $3,521.48. One-third of Tony’s net income is $1,173.83. La. C.C. art. 112 also states that in making an award, the court is to consider the financial obligations of the parties. Tony testified that he has monthly expenses of $2,122.92, which include a monthly bankruptcy payment of $650. Tony contends that his “disposable income” is only $1,398.56, and thus the support award must be capped at $466.19. We note that Tony’s argument blurs the distinction between “net income” and “disposable income.” As noted by the trial court, Tony’s expenses were “tremendous.” However, Tony had sufficient funds to pay a former spouse $700 per month in cash to live in her home. The award of $421.58 in this case clearly is not excessive whether computed on Tony’s net income or his claimed disposable income.
CONCLUSION
For the reasons stated above, we amend the trial court judgment to order Tony Randall King to pay the sum of $421.58 monthly to Tamra Hudson King in final periodic spousal support. In all other respects the judgment is affirmed, including that portion finding that Tamra Hudson King was free from fault in the | ^breakup of the marriage and is in need of and entitled to final periodic spousal support. Costs are assessed to Tony Randall King.
AMENDED IN PART; AFFIRMED AS AMENDED.

. At the time of the support hearing in 2013, Tony was 50 years old and Tamra was 52.

. Tamra testified that she developed a staph infection the week after the parties separated which delayed her cancer surgeiy until June 14, 2011. When her cancerous tumor was removed, she also underwent a total hysterectomy and removal of her appendix. She began a second round of chemotherapy in August 2011, which caused her to have bleeding behind one eye, necessitating care from a retinal specialist and two laser surgeries. Also, Tamra had cataract surgery and developed a sore on her cornea which had not healed at the time of the hearing in this matter.

.The evidence reflects that Tony remained in contact with his ex-wives during his marriage to Tamra. After Tony and Tamra separated, Tony lived with two of his ex-wives.

. Until its repeal in 1990, La. C.C. art. 138 specified numerous grounds for separation from bed and board including adultery; when either spouse has been convicted of a felony and sentenced to death or hard labor in the state or federal penitentiary; habitual intemperance of one of the married person, or excesses, cruel treatment, or outrages of one of them toward the other, if such habitual intemperance, or such ill-treatment is of such a nature as to render their living together insupportable; public defamation on the part of one of the married persons towards the other; abandonment; an attempt of one of the married persons against the life of the other; when the husband or wife has been charged with a felony, and shall actually have fled from justice, the wife or husband of such fugitive may claim a separation from bed and board, on producing proofs to the judge before whom the action for separation is brought, that such husband or wife has actually been guilty of such felony, and has fled from justice; intentional non-support of the husband of his wife or the wife of her husband who is in destitute or necessitous circumstances; when the husband and wife have voluntarily lived separate and apart for six months and no reconciliation has taken place during that time; when the spouses have lived six months separate and apart, voluntarily and without reconciliation, provided that such spouses shall execute an affidavit attesting to and testifying that they have so lived separate and apart and that there exists irreconcilable differences between the spouses to such a degree and nature as to render their living together insupportable and impossible.

. We note that the trial court disallowed some of the items claimed by Tamra. She has not appealed and these issues are not before us. The items allowed by the trial court are as follows: housing, $595; electricity, $150; water, $31; sewerage, $33; garbage pick-up, $23; cell phone and Internet, $120; car insurance, $35.08; renter’s insurance, $17.50; Medicare and prescription supplement, $200; Direct T.V. subscription, $80; gasoline, groceries, and household supplies, $300; miscellaneous vehicle maintenance costs, $100. These expenses are not extravagant. As set forth above, the only items contested on appeal by Tony are the Medicare and prescription supplement, Internet and television expenses, and the "miscellaneous” category which Tamra testified was for car maintenance.