Judgment rendered October 2, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,879-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SYBIL MARTIN KELLEY                    Plaintiff-Appellee

versus

SHELBY D. KELLEY                       Defendant-Appellant

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 62,795

Honorable Thomas W. Rogers, Judge

* * * * *

PLEASANT & WILLIAMS,                   Counsel for Appellant
THE BARRISTERS' LAW GROUP, LLC
By: Kristen B. Pleasant

OFFICE OF W. KYLE GREEN, LLC           Counsel for Appellee
By: W. Kyle Green
    Rebekah H. Wade

* * * * *

Before STONE, STEPHENS, and ELLENDER, JJ.

STONE, J., dissenting in part.

**ELLENDER, J.**

Shelby Kelley appeals a judgment ordering him to pay his ex-wife, Sybil Kelley, interim spousal support of $6,573.99 a month, retroactive to date of judicial demand. For the reasons expressed, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Shelby and Sybil got married on October 18, 2006, in Lincoln Parish. They had no children together. They physically separated on December 28, 2022, and Sybil filed this petition for Art. 102 and 103.1 divorce in January 2023. She included an ancillary claim for interim spousal support, together with claims not germane to the appeal, but her allegations of fault, and details of the eventual partition of community property, were deeply interwoven into the hearing on the rule for interim spousal support.

At that hearing, Shelby testified that he had been a certified water operator (person licensed to run rural water and wastewater facilities) and running his own company, Kelley Waterworks ("KWW"), since the 1990s. Sybil, however, testified that, prior to their marriage, he was an employee of Lincoln Parish Greater Ward One, and she worked at Tool City; it was only after they got married that they both quit their jobs and formed KWW. (In support, she offered an exhibit showing KWW applied for a federal employee identification number in April 2010.) They never formed a corporation or LLC but, during the marriage, they worked together running KWW, and Sybil eventually obtained her own water certification. They

secured contracts to run nine water systems in the area.[1]  For the tax year

2022, KWW reported income of $269,667 and business expenses of

$56,772.

After the separation, Shelby continued to run KWW, but Sybil's

association with it was terminated.  She took a part-time job at her son-in-

law's auto parts store, making $2,400 a month.

Each side filed an affidavit of monthly income and expenses full of

items that were contested at the hearing.  Sybil declared a gross monthly

income of $2,400, and net of $1,918.  She claimed monthly expenses of

$9,791.99, for a deficit of $7,873.99.  Unfortunately, much of Shelby's

cross-examination of Sybil focused on matters related to community

property and the poor condition of her house.[2]  The court, however, asked

pointed questions about many of her claimed monthly expenses, such as

pool maintenance, $600; lawn care, $400; gas and electricity, $700; vitamins

and supplies, $200; gifts, $300; birthday presents, $100; and medical

expenses, $46,000 total.  She admitted her actual medical debt was between

$8,000 and $9,000, and she was not currently making any payments on this.

The district court accepted Sybil's stated income as "uncontradicted"

but reduced her pool maintenance to $100, lawn care to $200, and deleted

gifts, finding reasonable monthly expenses of $8,491.99.  This left a deficit

of $6,573.99.

---

[1] These were, in chronological order, Town of Dubach, Hill-Greenwood, Sand Hill-Mt. Olive Water, Darbonne Water System, Hico Water System, Jeld-Wen Inc., Tri Water System, Town of Bernice, and Ardagh Group.

[2] Sybil is living in the former marital home, on Hwy. 167, south of Ruston.  There was prolonged testimony describing, and a stack of photos depicting, the state of this house.  Shelby is now living in the couple's camp house on Lake Claiborne, near Homer.

Shelby declared a net monthly income of $14,438 and net monthly expenses of $15,345.90, claiming a deficit of $997.90.[3] Both Sybil and the court seriously contested many items on his affidavit. Sybil offered an exhibit, P-5, showing that his 2022 income was $263,747, but projecting that his 2023 income was higher, $310,064. Shelby insisted that this increase was because of "extra work," and he wanted to count only the "guaranteed" contract amounts from the various water systems.

As for Shelby's claimed expenses, Sybil disputed that he was still tithing $600 a month. She got him to admit, on cross-examination, that the Town of Bernice gave him a credit card for gasoline, yet he was claiming $2,171 a month for fuel. She also got him to admit that he was being reimbursed for health insurance, yet he claimed $610 a month.

The court was extremely skeptical about many of Shelby's claimed expenses, particularly the vehicle expense of $83,587, which appeared to duplicate expenses of gasoline, insurance, depreciation, car washes, etc., that were already claimed individually. The court asked Shelby if he really drove 148,000 miles a year, perhaps 400 miles a day; Shelby maintained this was possible, as he worked 12-16 hours a day, seven days a week. The court questioned his claim of $46,000 in medical expenses; Shelby admitted these had accrued over two years, and he was unsure why his tax preparer declared them all in one year. The court also questioned the depreciation on a motor home that Shelby admitted he sold in 2021 and on a car that was in Sybil's exclusive possession. Shelby responded that he did not understand

---

[3] By our calculation, the difference is actually only $907.90.

3

the tax and accounting matters, but he stood by the expenses claimed in his affidavit.

The district court started with Shelby's 2022 tax return, showing gross income of $263,747, and found that two of KWW's clients (Town of Bernice and Ardagh Group) had committed to pay increases for 2023; the court "estimated" his 2023 income at $275,000. Addressing Shelby's fixed claims, the court found his mileage claim, averaging 391 miles a day, 7 days a week, was "not credible" and was also "duplicative when insurance, gasoline, repairs and depreciation are also claimed in other portions of the return." The court therefore disallowed the car and truck expenses of $83,587. It also found the claims of insurance, $1,680; deductible meals, $3,796; and utilities, $5,963, were "questionable as duplicative" and rejected them. It rejected depreciation of $85,248 because the assets were either completely depreciated or no longer in use in the business.

Turning to the monthly expenses, the court accepted the business expenses claimed on the tax return, $56,772, and contract labor of $21,600. Other claimed expenses – two auto loans, gasoline, insurance, and tools – were already included as fixed expenses, so the court rejected them. It also found "no credible evidence" to support the claims of tithes and a household maid.

**ACTION OF THE DISTRICT COURT**

The court reduced Shelby's claimed expenses from $15,345.90 to $8,693.81, leaving him $7,691.85 from which to pay spousal support, an adequate amount to cover Sybil's needs of $6,573.99. It rendered judgment awarding her this amount, retroactive to date of judicial demand, January 4,

4

2023. The judgment is silent as to the 180-limit for such an award, under La. C.C. art. 113 (A).

Shelby filed a motion for new trial, which the court denied, stating, "A lot of what Mr. Kelley claimed, I just didn't find credible." Shelby has appealed, raising five assignments of error.

**APPLICABLE LAW**

In a proceeding for divorce or thereafter, the court may award interim periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage. La. C.C. art. 111. The court may award a party interim spousal support based on the needs of that party, the ability of the other party to pay, and the standard of living of the parties during the marriage. La. C.C. art. 113 (A). An award of interim spousal support terminates 180 days from the rendition of a judgment of divorce; it may be extended, but only for good cause shown. *Id.*

The purpose of interim spousal support is to maintain the status quo without unnecessary economic dislocation until a final determination of support can be made and until a period of adjustment elapses, capped at 180 days after the judgment of divorce. *Ashley v. Ashley*, 54,133 (La. App. 2 Cir. 3/9/22), 335 So. 3d 468, and citations therein. A spouse's right to claim interim periodic support is grounded in the statutory duty of spouses to support each other during marriage and thus provides for the spouse who does not have sufficient income for his or her maintenance during the period of separation. *Id.* The needs of the claimant spouse have been defined as the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the payor spouse's ability to pay. *Id.*

5

The trial court is afforded much discretion in determining an award of interim spousal support, and such an award will not be disturbed absent a clear abuse of discretion. *Id.*; *Welch v. Welch*, 51,566 (La. App. 2 Cir. 8/9/17), 244 So. 3d 581. An abuse of discretion will not be found if the record supports the court's conclusions about the needs of the claimant spouse or the means of the payor spouse and his or her ability to pay. *Id.*; *Rockett v. Rockett*, 51,453 (La. App. 2 Cir. 6/21/17), 223 So. 3d 1227.

Domestic relations issues, such as the determination of entitlement to spousal support, largely turn on evaluations of witness credibility. *Id.*; *King v. King*, 48,881 (La. App. 2 Cir. 2/26/14), 136 So. 3d 941. The factfinder has the discretion to accept or reject, in whole or in part, the testimony of any witness. *Id.* Reasonable evaluations of credibility will not be disturbed on appeal. *Hayes Fund for First United Methodist Church of Welch v. Kerr-McGee Rocky Mtn. LLC*, 14-2592 (La. 12/8/15), 193 So. 3d 1110.

**DISCUSSION**

*Assignments 1 & 2: Sybil's Income*

By his first assignment of error, Shelby urges the court erred when it awarded Sybil $6,573.99 per month in interim spousal support. He contends Sybil offered "no evidence" to justify the amount awarded, other than her affidavit, and her own testimony contradicted much of her affidavit (as to her claimed expenses). By his second assignment, he urges the court erred when it failed to impute income to her and find her voluntarily unemployed. He contends the standard is the ability to earn a sufficient income and shows that Sybil holds the same certification as he does; citing his own testimony that she "refused to accept a potential contract" with Sand Hill, he submits the court should have imputed just as much income to her as to him.

6

As noted, Sybil filed an affidavit of average monthly income and expenses stating her gross income was $2,400 and her net $1,918; at the hearing, she testified that her gross was $2,400. Shelby offered no evidence to contradict this. While some form of documentation, such as pay stubs or employer statements, is useful, Shelby objected to neither the affidavit nor her testimony. In such a situation, the court is within its discretion to accept the party's testimony. *Stowe v. Stowe*, 49,496 (La. App. 2 Cir. 3/4/15), 162 So. 3d 638. We find no abuse of discretion.

Regarding the imputed income, we note that Shelby raised this argument neither in any pleadings nor in argument to the district court. Normally, an argument raised for the first time on appeal will not be considered. *Segura v. Frank*, 93-1271 (La. 1/14/94), 630 So. 2d 714; *Burch v. Burch*, 51,780 (La. App. 2 Cir. 1/10/18), 245 So. 3d 1138. Even so, the record does not support the argument. Shelby testified that he left Sand Hill-Mt. Olive Water "for a short period then came back," he "offered it to [Sybil] and her daughter," and he had no idea why they did not take it. Obviously, this does not constitute an offer from a water system and does not show that Sybil declined any available work. Given KWW's apparent saturation of the local market, the court could have reasonably found comparable opportunities were not available for Sybil to start her own business, particularly during the limited time period of interim spousal support. We find no abuse of discretion.

These assignments of error lack merit.

### Assignment 3: Sybil's Expenses

By his third assignment, Shelby urges the court erred when it determined that Sybil had a need for interim support. He reiterates that she

7

did not produce evidence of her $2,400 a month income – a claim already addressed and rejected in the preceding discussion. He then catalogs various items from Sybil's expenses and argues the district court should have discounted or disallowed them altogether. Sybil responds that the court's findings on all these items were within its discretion.

We have considered them individually.

**Homeowners' insurance, $488 a month.** Shelby contends Sybil failed to produce a statement verifying that she was paying this amount for insurance on a home that was in poor condition. While the record does not include a statement, Sybil testified that her policy covered not only the house, but two shops, and she got her agent to reduce coverage on the outbuildings to bring the premium down from about $600. Notably, Shelby claimed to have no idea how much the insurance was, even though he previously lived on the property, and he admitted the house had sustained some tornado damage that the insurance had covered. Although a statement from the insurer would have been preferable, on this record the court was entitled to find that Sybil was paying homeowners' insurance and that the claimed premium of $488 was reasonable.

**Pool maintenance, $100 a month.** Shelby concedes that Sybil claimed $600 a month for this, and the court reduced it to $100; however, by Sybil's own admission, they always serviced the pool themselves, so he argues this item should have been disallowed entirely. Sybil testified she had no idea how much chlorine was going to cost, because Shelby had always bought the supplies. As with the homeowners' insurance, some documentation of pool expenses would have been helpful, but we cannot say that $100 per month, for the duration of interim support, is unreasonable.

8

**Lawn care, $200 a month.** As with pool maintenance, Shelby asserts the inclusion of this item was erroneous in that the couple had always taken care of the lawn themselves, and Sybil offered no documentation of the cost of lawn care or medical records or doctors' notes to show that her health would prevent her from mowing the property herself. However, Sybil testified that the house sat on 22 acres, she had done the lawn until she got sick, but with her high blood pressure she could no longer handle the heat. She also testified that she had secured someone to cut the grass but had not paid him yet because she did not yet have the money to do so. Shelby confirmed that the couple used to do the lawn together, but Sybil's nephew had to help occasionally. Neither side disputed that maintaining the lawn was essential upkeep. On this record, we cannot say that $200 per month, for the duration of interim support, is unreasonable.

**Medical bills, $700 a month.** Shelby contends that Sybil admitted she was not actually paying anything on her medical bills, and, in fact, she had written them off on her 2022 income tax return. Notably, Shelby did not dispute that she had incurred significant medical bills. Sybil testified that she had medical collection expenses for emergency room visits for high blood pressure, these came to $8,000 or $9,000, she had been paying one judgment at the rate of $300 to $500 a month, depending on what she could afford that month, and she was not paying the others because she had never received any distribution from KWW.

Bearing in mind that interim spousal support is based on the standard of living of the parties during marriage, we find no abuse of the court's discretion in accepting $700 as an expense to pay off medical bills. We also note that, aside from Shelby's argument, there was no proof that claiming a

9

debt as a "write off" for income tax purposes extinguishes the obligation to the creditor.

**Gas (butane), $350 a month, and electricity, $400 a month.** Shelby argues "it is not possible for her to pay" these amounts, as she admitted her last gas bill was only $199. He suggests a total utility bill of $350 a month would be more reasonable. However, Sybil testified that the property has three Claiborne Electric meters: house, horse barn, and motor home and swimming pool – the latter usually costing more than the one for the house. She testified that she thought her last O'Neal Gas bill, on an autopay plan, was $199 (trial was held in May), and that the generator, if needed, also ran on butane. On this record, the district court did not abuse its vast discretion in approving these expenses as reasonable utilities.

**Health insurance, $1,722 a month.** Shelby contends Sybil offered no proof to support this amount for health, cancer, eye, and dental insurance premiums. He cites his own testimony that he was paying $610 a month for insurance, which would have covered her until the divorce was granted.

Here, as elsewhere, documentation would have been preferable. However, Shelby testified he was getting a $1,000 reimbursement from the Town of Bernice for health insurance, and his affidavit stated he was also paying $610 a month out of pocket for a policy that would keep Sybil covered until the date of divorce. Obviously, after the divorce she would have to buy her own policy. In light of Shelby's $1,000 allotment from Bernice plus the $610 he was paying out of pocket, Sybil's claimed total of $1,722 is by no means unreasonable.

**Vehicle insurance, $242 a month.** Shelby cites his own testimony that he was paying all community debts and insurance on the vehicles, motor

home, and boat; hence, the court should have disallowed this claim. On cross, however, when asked who paid insurance on the brown Dodge used by Sybil, he candidly admitted, "I assume she does." On this ambivalent testimony, the court was within its discretion to accept the claimed charge.

**Tools, $200 a month.** Shelby concedes that Sybil bought some hand tools – a cordless string trimmer and a hand chainsaw – for maintenance around the home, but contends this was a one-time purchase, not a recurring expense. He argues this expense should have been disallowed.

Contrary to Shelby's contention, the district court questioned "tools" as a valid expense and, ultimately, *rejected* it as "not credible" or "not supported" by the evidence, both in its written reasons for judgment and in oral reasons denying a new trial. Considering that the court excluded this item, any claim that the court erred in including it lacks merit.

**Postage, $50 a month.** Shelby argues the court erred in allowing this expense; although Sybil listed it, she testified that her monthly postage was "probably not $50 worth."

On close review, we find that the court *never mentioned* postage, either in its written reasons for judgment or in oral reasons denying a new trial. The court's silence as to this issue or claim must be deemed a rejection thereof. *M.J. Farms Ltd. v. Exxon Mobil Corp.*, 07-2371 (La. 7/1/08), 998 So. 2d 16; *Bradley v. St. Francis Med. Ctr.*, 51,572 (La. App. 2 Cir. 9/27/17), 244 So. 3d 722. On this record, we cannot find that the court included this charge in figuring Sybil's expenses. The argument that the court erred in failing to exclude it lacks merit.

**Sybil's bad faith.** Finally, in a wide-ranging argument, Shelby urges Sybil was "in bad faith and does not have unclean [*sic*] hands." He argues

11

that she was the one who supplied all the information to the tax preparer, and she should be held to all the representations she made to Internal Revenue; all her claimed expenses were "grossly overinflated"; and she was improperly trying to appropriate one-half the profits of KWW.

The district court was charged with finding the needs of the claiming party and the standard of living of the parties prior to the divorce. La. C.C. art. 113 (A). That court was in the superior position to assess the credibility of the parties, including any motivations that may have led them to deviate from total honesty. Ultimately, it found that Sybil was in a precarious position after the divorce. It applied some downward adjustments to her claimed expenses but found most of her claims credible and reasonable. We find no abuse of the court's vast discretion. This assignment lacks merit.

### Assignment 4: Shelby's Ability to Pay

By his fourth assignment, Shelby urges the court erred when it determined he had the ability to pay interim spousal support. He argues that his guaranteed monthly income is only $14,438, and anything more than that is pure speculation. He contends the court erred in accepting and utilizing Exhibit P-5, which projected his 2023 income but did not state any basis for its higher estimates. Regarding his expenses, he argues the court improperly disregarded his $83,587 in mileage, as this is an "ordinary and necessary expense required to produce income," citing *Mayo v. Crazovich*, 621 So. 2d 120 (La. App. 2 Cir. 1993); his claim for $1,685 in auto insurance; and car note of $700 a month for a Buick he recently bought and uses to "make rounds" and "save on gas and diesel." He asserts the court abused its discretion in finding this car was a gift for Ms. Austin.

12

Sybil responds that the court carefully and correctly analyzed each of these claims and, though it disallowed them, it properly accepted other expenses of $56,772, plus contract labor of $21,600. As a result, she submits, Shelby has a monthly income of $16,385, which is adequate to cover Sybil's proven need of $6,573.99 for interim spousal support.

We address each item separately.

**Shelby's income.** As noted, KWW's 2022 tax return showed gross receipts of $263,747 and expenses of $56,772. On cross-examination, Shelby admitted that one contract, with Ardagh Group, would increase from $7,300 in 2022 to $21,900 in 2023, an increase of $14,600; another, the Town of Bernice, had already given him extra payments of $5,800 over the first two months of 2023. These two pay increases alone would raise KWW's receipts to $284,147. Although he argued repeatedly that these increases were not "guaranteed," there was no evidence that either one had been withdrawn. On this record, the court was entirely within its discretion to set Shelby's 2023 income at $275,000.

**Car and truck expenses, $83,587.** Shelby asserts this is the amount that Sybil supplied to the tax preparer as one of KWW's ordinary business expenses, and the court should have accepted it. However, on the 2022 tax return, Shelby declared that KWW's business expenses were $56,772. There was no explanation how he could claim both his actual expenses of operating a vehicle, including depreciation, and the standard mileage rate. We perceive no manifest error in accepting the declared business expense.

Moreover, the district court seriously questioned the claimed mileage. The court finally calculated that this would amount to driving 142,882 miles a year, or 391 miles per day seven days a week, which the court considered

13

not a credible claim. Shelby testified that he spent some $65 to $70 a day on diesel fuel, and then admitted, "We charge for mileage," further calling into question how much of this expense is valid. On this record, we simply cannot say the court abused its discretion in disallowing this claim.

**Auto insurance, $1,685.** Shelby argues the court improperly denied this as a duplicate claim. He asserts this was the premium on a personal policy covering community vehicles, including the Dodge, on which he was paying the monthly note and insurance but which was in Sybil's exclusive possession. However, Sybil's affidavit showed that she was paying $242 a month for this coverage, and Shelby candidly "assumed" she was paying for insurance on the Dodge. Moreover, he admitted that he was treating the other vehicles as business vehicles, for which he was claiming depreciation. The court found that this coverage was already included in Shelby's claim for commercial auto insurance, a total of $3,455. In short, there is sufficient evidence for the court to treat this claim as duplicative.

**Car note on Buick, $700.** Shelby contends he bought this car, which he uses to save on gas and diesel, as well as to "make rounds." He disputes Sybil's testimony that he bought it as a gift for his friend, Ms. Austin. However, this item was not included in Shelby's affidavit of income and expenses and, in questioning by the court, he admitted that Ms. Austin previously used the car two or three days a week and, currently, seven days a week. Unlike the parties, we will not indulge the long and at times recriminating testimony about the exact nature of Shelby's relationship with Ms. Austin. On the strength of his affidavit and testimony, however, we find a more than adequate basis for the court to disallow this claim.

This assignment of error lacks merit.

14

### Assignment 5: Motion for New Trial

By his final assignment of error, Shelby urges the district court erred in denying his motion for new trial on the basis that the judgment was contrary to the evidence. He submits he has shown "several discrepancies" between the court's ruling, the evidence adduced, and the testimony. He concludes this meets the requirements of La. C.C.P. art. 1972. He asks this court to reverse the judgment and deny interim spousal support.

A new trial shall be granted, upon contradictory motion of any party, when the verdict or judgment appears clearly contrary to the law and the evidence. La. C.C.P. art. 1972 (1). A new trial may be granted if there is good ground therefor. La. C.C.P. art. 1973. The standard of review of a ruling on the motion for new trial is abuse of discretion. *Pitts v. La. Med. Mut. Ins. Co.*, 16-1232 (La. 3/15/17), 218 So. 3d 58.

Because we have determined that none of the assigned errors has merit, and the judgment does not appear clearly contrary to the law and the evidence, we find no abuse of the district court's discretion in denying a new trial. *Criswell v. Kelley*, 54,188 (La. App. 2 Cir. 3/9/22), 335 So. 3d 483. This assignment lacks merit.

We note, however, that any award of interim spousal support "shall terminate" 180 days from the rendition of the judgment of divorce, unless the obligee can show good cause for an extension. La. C.C. art. 113 (A). The Kelleys' divorce was rendered August 28, 2023, so interim spousal support should have terminated February 24, 2024. Any support after that date will require a separate demand and proof, neither of which is present in

15

the instant record.  We decline to address any potential support after the statutory date of termination.

## CONCLUSION

For the reasons expressed, the judgment is affirmed.  All costs are to be paid by Shelby D. Kelley.

**AFFIRMED**.

**STONE, J., dissenting in part**

I respectfully dissent regarding the amounts of several of Sybil's expenses allowed by the trial court.

Sybil has the burden of proving her expenses, and several of her claimed expenses lack prima facie proof. Many of her claimed expenses are apparently quite inflated. Worse yet, none were supported by receipts, invoices, bank statements, or credit card statements—despite being the type of expenses for which at least one of the foregoing types of documentary evidence is virtually always available. Are we to believe that Sybil paid cash and received no receipt or invoice for any of these expenses, yet was able to *credibly* testify regarding the specific amounts of such expenses? The trial court abused its discretion in awarding Sybil such high amounts for certain expense items.

*Sessions & Fishman v. Liquid Air Corp.*, 616 So. 2d 1254, 1258 (La. 1993) holds that documentary evidence is required for prima facie proof of an "open account" under La. R.S. 9:2781. Mere testimony—even if uncontroverted—is insufficient:

> In this context, the affidavit of correctness refers to the validity of the account, i.e. the "correctness" of the sum due. This provision does away with the necessity of taking testimony in order to establish the validity of the account. *The existence of the claim, however, is supported by a statement of the account or invoices.* Thus, in order to establish both the existence and the validity of a demand for a sum due on an open account, it is necessary for a plaintiff to present evidence of the account itself and an affidavit, or testimony, attesting to its correctness.

It is true that La. R.S. 9:2781 and *Sessions & Fishman, supra*, address claims by the *creditor* on an open account, which is not involved here. However, the evidentiary requirement of documentary proof is somewhat

1

analogous.  We do not have great reason to doubt that Sybil paid *something* for these necessary expenses; rather, it is her proof of the *specific amounts* that is deficient.  Sybil's claimed expenses—i.e., *debts*—are *of the same nature* as those addressed by La. R.S. 9:2781 and should likewise be subject to the requirement of documentary evidence such as receipts, invoices, bank statements, or credit card statements.

The trial court abused its discretion in accepting Sybil's claims of the following *monthly* expenses: (1) $488 for homeowner's insurance (with no premium notice or proof of payment adduced); (2) $350 for gas (with no invoice or proof of payment adduced); (3) $400 for electricity (with no invoice or proof of payment adduced); and (4) $1722 for health, eye, cancer, and dental insurance (with no premium notice or proof of payment adduced). We must reduce these awards to the highest amount that is not an abuse of discretion; a 25% reduction seems in order.  Also, the grooming/personal items expenses should be reduced from $200 to $50.

For these reasons, I dissent in part.