908 So.2d 1231 (2005)
Thomas Ray HUTSON, Plaintiff-Appellant
v.
Gladys May Dampier Claunch HUTSON, Defendant-Appellee.
No. 39,901-CA.
Court of Appeal of Louisiana, Second Circuit.
August 9, 2005.
*1232 Wright & Underwood by Patrick H. Wright, Jr., Bobby N. Underwood, Monroe, for Appellant.
Robert Alan Breithaupt, for Appellee.
Before BROWN, STEWART and CARAWAY, JJ.
*1233 STEWART, J.
Thomas Ray Hutson, seeks reversal of the of the trial court's judgment finding his former spouse, Gladys Hutson, free from fault in the dissolution of the marriage for the purposes of awarding final periodic spousal support. For the reasons set forth below, we affirm the judgment of the trial court.

FACTS
Thomas Ray Hutson ("Mr. Hutson"), and Gladys May Dampier Claunch Hutson ("Ms. Hutson"), were married on September 27, 1985, in Hamburg, Arkansas, and subsequently established a matrimonial domicile in Ouachita Parish. No children were born of the marriage. On August 28, 2003, Mr. Hutson filed for divorce, pursuant to La. C.C. art. 102, in the Fourth Judicial District Court for the Parish of Ouachita. On September 22, 2003, Ms. Hutson filed an answer and reconventional demand in which she alleged that she was free from fault in the break up of the marriage and was in need of final periodic support. Mr. Hutson filed an answer to the reconventional demand generally denying Ms. Hutson's assertion that she was free from fault in the break up of the marriage, but made no factual allegations as to any conduct on her part which would constitute fault.
On March 11, 2004, Mr. Hutson filed a rule for a final judgment of divorce and a determination on the issue of fault in the break up of the marriage. At the hearing, the court heard from the parties and various friends and relatives as to the circumstances surrounding the break up of the marriage.
Mr. Hutson testified that during the marriage, Ms. Hutson subjected him to criticism and nagging "almost daily." She criticized his children and his fishing, and she nagged him about doing yard work. Mr. Hutson indicated that his children quit coming to the house, but he did not explain how this was attributable to Ms. Hutson since he admitted she never criticized the children in their presence. He also indicated he quit fishing because she would tease him when he did not catch anything.
Mr. Hutson also alleged that Ms. Hutson constantly accused him of having extramarital affairs. However, his testimony reflected that Ms. Hutson was more inquisitive than accusatory about his relationships with other women. He also testified that Ms. Hutson controlled the family finances, but gave no testimony that he was in disagreement with the arrangement.
He testified that the parties did not have sexual relations or share a bedroom during the last two years of their marriage, but he admitted that it was because he did not want to have anything to do with "somebody that just, uh, is a bitch." He admitted that about a year before Ms. Hutson moved out of the matrimonial domicile, he told her he did not love her anymore. He testified that he was relieved when she moved out and admitted that he never asked her to return. Even though she moved out, Mr. Hutson stated he believed that Ms. Hutson did not want a divorce.
The court also heard from Lisa Woods, a self-described estranged niece of Ms. Hutson's. After admitting that she had not been on speaking terms with her aunt for four years, she testified that her aunt was very controlling and insulting. Most of her testimony was based on hearsay as she was not a witness to the day-to-day events in the marriage. And while she undeniably had no kind words for her estranged aunt from a personal perspective, her testimony is less than instructive on the fault issue.
Mr. Hutson also submitted the testimony of his son, Clint Hutson who testified *1234 that he had not been out to his father's home in six years. Therefore testimony could not corroborate any of his father's allegations as to Ms. Hutson being the source of any problems in the marriage or between Clint and his father.
Lastly, Mr. Hutson submitted the testimony of Carolyn Morris, the woman who has been his barber for the past 15 years and with whom Ms. Hutson allegedly accused him of having an affair. Morris confirmed that Ms. Hutson, who was also a client, always made Mr. Hutson's haircut appointments. Morris testified that the Hutsons' hardly spoke about each other while getting their hair cut. However, Mr. Hutson would occasionally tell her of Ms. Hutson's jealous streak, and Ms. Hutson was sometimes critical of Mr. Hutson's inability to repair things around the house.
After the parties separated and divorce proceedings were initiated, Mr. Hutson asked Morris to dinner. After the parties' outing, Ms. Hutson accused Morris of having an affair with Mr. Hutson, which Morris denied.
On Ms. Hutson's behalf, the trial court heard from Candy Edwards, her granddaughter, who testified that she was a frequent guest in the Hutsons' home and even vacationed with the parties on occasion. Ms. Edwards stated that she never witnessed the parties argue or raise their voices at each other. She also noted that her grandmother performed the majority of the household chores including the cooking, cleaning and laundry. She also prepared breakfast for Mr. Hutson and packed him a lunch every day even after he told her that he did not love her anymore. She worked in her garden and even mowed occasionally. Ms. Edwards denied ever hearing her grandmother voice suspicions about her husband's fidelity prior to the parties' separation.
Ms. Edwards' testimony was substantively corroborated by Judy Fondren, Ms. Hutson's sister who lived on the parties' property between 1987 and 1989. Ms. Fondren believed the parties had a good marriage and never witnessed any bickering, nagging or arguing between the parties.
The trial court also heard from two of the parties' neighbors, Gay Montgomery and Beverly Powell. Both women testified that they spent a considerable amount of time in the presence of the parties. Both witnesses testified about their perception that the parties had a good marriage and that Ms. Hutson was an attentive spouse who regularly cooked and kept a clean house. Neither witness could recall hearing the parties argue, or hearing Ms. Hutson nagging or berating Mr. Hutson. They also denied ever hearing Ms. Hutson voice suspicions about whether her husband was having an extramarital affair prior to their separation.
Lastly, the trial court heard from Ms. Hutson herself. Ms. Hutson testified that she and Mr. Hutson had a good relationship during their marriage until he told her he did not love her anymore and moved out of their bedroom. She cooked, cleaned and did the laundry. She worked in her garden and helped with the mowing. She also handled the family finances without objection from Mr. Hutson until the very end of their 18-year marriage. She also testified that while she had some persistent health problems, she never refused him sex unless she was acutely ill.
Ms. Hutson testified that while she and Mr. Hutson's daughter had a somewhat strained relationship at the outset, she generally had a good relationship with his children. She denied that they fought or argued on a regular basis, or that she accused him of having affairs. She also affirmatively stated that she did nothing to *1235 break up the marriage and that it broke down when he told her that he did not love her and wanted a divorce.
At the conclusion of the hearing, the trial court rendered a judgment of divorce. A final judgment of divorce was signed on May 14, 2004. The trial court ordered the parties to submit briefs on the issue of fault and took the matter under advisement. On June 3, 2004, the trial court issued reasons for judgment finding that there was insufficient evidence to support a finding that Ms. Hutson was at fault in the break up of the marriage. In its ruling, the trial court stated that Mr. Hutson failed to meet his burden that Ms. Hutson was at fault. A written judgment to this effect was signed on June 21, 2004, and certified as final by the trial court. Mr. Hutson took an appeal from that judgment. This court subsequently dismissed that appeal and remanded the matter to the trial court after concluding that the certification of the judgment as final was inappropriate.
After remand, Ms. Hutson filed a rule to show cause why final periodic spousal support should not be awarded which was set for hearing on November 29, 2004, with a preliminary conference before a hearing officer to be heard on November 9, 2004. After the preliminary conference, the hearing officer issued a report recommending that Mr. Hutson be ordered to pay $900.00 per month in final periodic support. Mr. Hutson filed a timely objection to the hearing officer's recommendations, and the matter was taken up at the previously scheduled rule date of November 29, 2004. After the hearing, the trial court signed a judgment adopting the hearing officer's recommendations. Mr. Hutson appeals, arguing that the trial court erred in finding that Ms. Hutson was free from fault and in placing the burden of proof on him to prove her fault in the break up of the marriage.

DISCUSSION

Burden of Proof
First, we address Mr. Hutson's assignment of error regarding the misapplication of the burden of proof by the trial court. The jurisprudence is unequivocal on the issue of who bears the initial burden on the fault question in final periodic support proceedings. The burden is squarely on the claimant spouse who must show that she is free from fault in the dissolution of the marriage. Jones v. Jones, 35,502 (La.App. 2d Cir.12/05/01), 804 So.2d 161; Lyons v. Lyons, 33,237 (La.App. 2d Cir.10/10/00), 768 So.2d 853, writ denied, XXXX-XXXX (La.1/5/01), 778 So.2d 1142. In brief, Ms. Hutson concedes that the trial court erred in placing the initial burden on Mr. Hutson to prove that she was at fault in the break up of the marriage.
Where one or more trial court legal errors interdict the fact-finding process, and the record is otherwise complete, the reviewing court should make its own independent de novo review and assessment of the record. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502. Because the trial court's misplacement of the initial burden in the present case prevented it from making a finding of fact on whether Ms. Hutson met the burden of proving her freedom from fault, we will conduct a de novo review of the record.
The jurisprudence provides little guidance on how a claimant spouse is to perform the task of proving freedom from fault. While the case law indicates that the burden can be shifted to the non-claimant spouse when the divorce is obtained on the basis of adultery of the non-claimant spouse, see Lagars v. Lagars, 491 So.2d 5 (La.1986), there is no indication of *1236 how one shifts the burden when a divorce is obtained on the basis of living separate and apart for the requisite period of time.
Ms. Hutson presented evidence in the form of her own testimony and that of her niece, sister and neighbors. She affirmatively stated that she did nothing to break up the marriage. Her niece, sister and neighbors, who had been exposed to the couple at various times throughout the marriage, testified that Ms. Hutson had been a good wife who performed her fair share of the household duties. They testified that the parties rarely argued, and they denied witnessing any of the nagging which Mr. Hutson alleges plagued their marriage.
We find that this evidence is sufficient to establish freedom from fault in instances where the divorce is not obtained on the fault grounds delineated in La. C.C. art. 103. Ms. Hutson made a prima facie showing that she was not at fault in the break up of the marriage by presenting testimony to support her version of the events leading to the break up of the marriage. Such a prima facie showing was sufficient to meet her initial burden of proof. Once that burden was met, the burden shifted to Mr. Hutson to prove conduct on the part of the claimant spouse which rises to the level of fault.

Fault
Fault is a threshold issue in a claim for spousal support. Roan v. Roan, 38,383 (La.App. 2d Cir.4/14/04), 870 So.2d 626. In a proceeding for divorce or thereafter, the court may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay. La. C.C. art. 111. Statutory law does not specify what constitutes fault so as to bar an award of final periodic support. However, the jurisprudence has characterized the necessary conduct as synonymous with the fault grounds which previously entitled a spouse to a separation under former La. C.C. art. 138 or the fault grounds which currently entitle a spouse to a divorce under La. C.C. art. 103.
Prior to its repeal, Article 138 provided the grounds for separation which included adultery, habitual intemperance, excesses, cruel treatment or outrages, making living together insupportable, and abandonment. La. C.C. art. 103 currently entitles a spouse to seek a fault-based divorce on the basis of the other spouse's adultery or conviction of a felony sentence punishable by death or hard labor. A spouse who petitions for permanent support need not be totally blameless in the marital discord. Only misconduct of a serious nature, providing an independent contributory or proximate cause of the break up, equates to legal fault. Roan, supra; Lyons v. Lyons, supra. A party is not deprived of alimony due to a reasonably justifiable response to the other spouse's initial acts. A spouse who perceives infidelity may become quarrelsome or hostile. Such a reasonable reaction does not constitute legal fault. The commission of adultery causes the break up, not the reaction. A spouse who reacts should not be precluded from receiving alimony solely because of his or her own response. Lyons, supra.
The only two grounds raised by Mr. Hutson in relation to potential fault on the part of Ms. Hutson were cruel treatment and abandonment. In order to prove abandonment, a party must show that the other party has withdrawn from the common dwelling without lawful cause or justification, and the party has constantly refused to return to live with the other. Roan, supra. Mr. Hutson did not satisfy these requirements because he admitted *1237 that he had told his wife he did not love her, was relieved when she moved out of the house and had never asked her to return.
To prove cruel treatment, Mr. Hutson needed to show a continued pattern of mental harassment, nagging and griping by one spouse directed at the other so as to make the marriage insupportable as mere bickering and fussing do not constitute cruel treatment for purposes of denying alimony. Lyons, supra. We find that Mr. Hutson's allegations as to the amount of nagging he endured during the marriage, which were not corroborated by his own witnesses and were contradicted by ample testimony from Ms. Hutson's witnesses, do not rise to the level of cruel treatment.
While many spouses may be tempted to characterize repeated requests to perform household chores such as mowing and yard work as cruel treatment, the level testified to by Mr. Hutson falls far short of that which would be required to make a marriage insupportable. Also, the record does not support Mr. Hutson's contentions that Ms. Hutson repeatedly accused him of infidelity. She denied having any such suspicions before the parties separated, and no one recalled Ms. Hutson ever confiding any such suspicions. Nor does the record support his contention that Ms. Hutson alienated him from his children. Even Mr. Hutson's own son would not corroborate the allegation. All in all, the evidence failed to establish a continued pattern of mental harassment.

CONCLUSION
For the foregoing reasons, the judgment of the trial court awarding final periodic support to Ms. Hutson in the amount of $900.00 per month is hereby affirmed. Costs of this appeal are to be borne by Mr. Hutson.
AFFIRMED.