MARC E. JOHNSON, Judge.
li>This is a domestic case involving the determination of fault and the denial of a motion for contempt; filed by Plaintiff. For the following reasons, we affirm in part, vacate in part, and render.

FACTS & PROCEDURAL HISTORY

The parties were married in March 1987. On November Í2, 2013, Plaintiff, Jac Barnett (“Jac”), filed a Petition for Divorce seeking a divorce from Defendant, Melisa Barnett (“Melisa”), under La. C.C. art. 102, which requires the parties live separate and apart for a specific time period set forth in La. C.C. art, 103.1.[1] In his petition, Jac alleged Melisa was at fault based on adultery and ill-treatment. He further sought partition of the community *464 property, use and occupancy of the marital home, and a temporary restraining order prohibiting Melisa from transferring, moving, disposing or alienating assets of the community.
|sMelisa answered the petition and reconvened, likewise seeking a divorce from Jac under Article 102, as well as interim and final periodic spousal support. She alleged that Jac was at fault for the breakup of the marriage based on cruel treatment and that she was free from fault. She further sought exclusive use of the marital home pending a partition of community property, a temporary restraining order prohibiting Jac from disposing of community property, and other incidental matters.
After a hearing before the domestic hearing officer, the trial court rendered a judgment on April 1, 2014, awarding Jac exclusive use of the marital home located on Woodvine Ave. effective April 15, 2014. Additionally, Melisa was awarded interim spousal support. Thereafter, on April 10, 2014, Jac filed a rule for contempt alleging that Melisa impermissibly removed the majority of the contents of the Woodvine Ave. home and that she damaged the back gate of the home in the process. On August 19, 2014, Melisa filed a rule for contempt claiming that Jac failed to pay interim spousal support and was in arrears.
Both parties’ rules for contempt were heard by the domestic hearing officer on September 23, 2014. The hearing officer recommended that Jac’s rule for contempt be denied on the basis there was no court order regarding the removal of items, which the parties disagreed whether the items were community or separate, from the home and that the back gate had been previously damaged. He also determined that Jac owed $14,000 in past due spousal support, but did not recommend the amount be made executory. He further recommended that both parties pay their own attorney’s fees and court costs. Both parties timely filed objections to the hearing officer’s recommendations and requested a de novo hearing by the district court judge. The trial judge set a hearing for October 22, 2014.
14When the parties appeared at the October 22, 2014 hearing, they indicated that they had reached an agreement regarding Melisa’s rule for contempt relating to interim spousal support. In particular, Jac agreed to pay Melisa $41,814 in interim spousal support, $11,814 which had already been paid and $30,000 which was to be paid out of Jac’s IRA. The parties stated that this agreement fully resolved Melisa’s pending rule for contempt regarding interim spousal support. The parties further agreed that Jac’s rule for contempt would be reset.
On April 30, 2014, in the interim of the parties filing the above rules for contempt, Melisa filed a motion to set the issue of fault for hearing and determination. In the motion, Melisa alleged the issue of fault had been “joined” between the parties and had not yet been determined. The matter was initially set for July 14, 2014, but was continued several times and ultimately heard on January 16,2015.
Prior to the hearing on the issue of fault, Jac filed a rule to show cause why divorce should not be granted on the basis the parties had continuously lived separate and apart for 160[sic] days without reconciliation.[2] After a hearing, a judgment of divorce was signed on November 3, 2014, granting Jac a divorce from Melisa.
*465 Thereafter, on January 16, 2015, the parties came for a hearing on the issue of fault and Jac’s rule for contempt.[3] After three days of a hearing spread over three months, the trial court rendered judgment on May 1, 2015, dismissing Jac’s allegations of fault, with prejudice, after finding he failed to prove by a preponderance of the evidence that Melisa was at fault in the breakup of the marriage. The trial court also denied Jac’s rule for contempt regarding Melisa’s [^removal of items from the marital home. The trial court further held Jac in contempt of court for failing to pay interim spousal support. The trial court allowed Jac to purge himself of contempt upon paying $14,000 in arrears by a specified date. It is from this judgment that Jac now appeals.

ISSUES

On appeal, Jac first contends the trial court erred in failing to find Melisa at fault for the breakup of the marriage. He argues the trial court incorrectly placed the burden of proof on him to show that Melisa was at fault for the breakup of the marriage when the burden belonged to Melisa because of her claim for spousal support. Second, Jac asserts the trial court erred in failing to find Melisa in contempt of court for removing furnishings from the home and for breaking the fence. And, third, Jac maintains the trial court erred in finding him in contempt of court for failing to pay interim spousal support because there was no pending rule for contempt against him.

LAW & ANALYSIS

Fault

In Jac’s petition for divorce, he alleged that Melisa was at fault because she had committed adultery. Under La. C.C. art. 103(2), a divorce shall be granted on the petition of a spouse upon proof that the other spouse has committed adultery. The petitioner has the burden of proving his claim of adultery by a preponderance of the evidence. Tidwell v. Tidwell, 49,512 (La.App. 2 Cir. 11/19/14); 152 So.3d 1045, 1047. Although Jac alleged adultery in his petition for divorce, he ultimately obtained a divorce on the basis of living separate and apart for 180 days without any determination of fault. Thus, Jac’s allegation of fault in his petition for divorce was rendered moot by the judgment of divorce he obtained under La. C.C. art. 102.
| fiWhen Melisa reconvened in the petition, she sought final periodic spousal support. Final periodic spousal support may only be awarded to a spouse who has not been at fault in the termination of the marriage and is need of support. La. C.C. art. 111. Fault is a threshold issue in a claim for spousal support. The initial consideration in determining if a claimant is entitled permanent spousal support is whether he or she is free from fault in causing the breakup of the marriage, and once the lack of fault is established, the basic tests for the amount of spousal support are the needs of that spouse and the ability of the other spouse to pay. English v. English, 09-214 (La.App. 5 Cir. 12/8/09); 30 So.3d 33, 35. The spouse seeking final periodic spousal support has the burden of proving that he or she is without fault. Id.
The purpose of the January 16, 2015 hearing was to determine the issue of fault as it related to Melisa’s request for final periodic spousal support, as well as Jac’s rule for contempt on the removal of items from the marital home. According to the *466 record, at the outset of the hearing, both parties-and the trial court all agreed that Melisa bore the. burden of proving she was without fault for the breakup of the marriage. However, when rendering judgment, the trial court stated that-“Jac K. Barnett failed to prove by a preponderance of the evidence that Melisa D. Barnett. was at fault in the breakup of- the marriage,” and dismissed Jac’s allegations of fault with prejudice.
Generally, a trial court’s finding of fault is a factual determination subject to the manifest error standard of review. Smith v. Smith, 08-575 (La.App. 5 Cir. 1/12/10); 31 So.Sd 453, 460. However, when a trial court applies incorrect principles of law and such errors are prejudicial, it commits legal error and the manifest error standard" is no longer applicable. Evans v. Lungrin, 97-541 (La.2/6/98); 708 So.2d 731, 735. Applying the wrong burden of proof is inherently ^prejudicial because it casts’ a more onerous standard than the law requires on one of the parties. Leger v. Leger, 03-419 (La.App. 3 Cir. 7/2/03); 854 So.2d 955, 957. When one or more trial court legal error interdict the fact-finding process, and the record is otherwise complete, the reviewing court must conduct a de novo review. Evans, supra at 735.
As we have explained, Jae’s allegations of fault in his petition for divorce were rendered moot when he obtained a judgment of divorce under La. C.C. art. 102; thus, the only issue of fault before the trial court was in connection to Melisa’s claim" for final periodic spousal support, for which she bore the burden of proving she was free from fault. By placing the burden on Jac to prove Melisa was at fault in the breakup of the marriage, the trial court committed legal error. Therefore, we will conduct a de novo review to determine whether Melisa proved she was free from fault in the dissolution of the marriage. See Hutson v. Hutson, 39,901 (La. App. 2 Cir. 8/9/05); 908 So.2d 1231, 1235.
Statutory law does not specify what constitutes fault so as to bar an award of final periodic spousal support. However, the jurisprudence has found the necessary conduct to be synonymous with the fault grounds which previously entitled a spouse to a separation under former- La. C.C. art. 138 or the fault grounds which currently entitle a spouse to a divorce under La. C.C. art. 103. Hutson, supra at 1236. Prior to its repeal, Article 138 provided the grounds "for separation which included adultery; habitual intemperance, excesses, cruel treatment or outrages, making living together insupportable, and abandonment. Article 103 currently entitles a spouse to seek a fault-based divorce on the basis of the other spouse’s adultery, conviction of a felony with a sentence of death or imprisonment at hard labor, the physical or sexual abuse of the spouse seeking a divorce or a child of one of thé spouses during the marriage, or the issuance of a protective | Rorder during the marriage against the other spouse to protect the spouse seeking the divorce of a child of one of the spouses from abuse.
The jurisprudence has further broadened fault to include other activity that can be construed as fault for the purpose of denying periodic spousal support. Terry, v. Terry, 06-1406 (La.App. 3 Cir. 3/28/07); 954 So.2d 790, 794. Fault, which will preclude support, contemplates conduct or substantial acts of commission or omission by a spouse violative of his or her marital duties or responsibilities. Evans v. Evans, 04-215 (La.App. 5 Cir. 7/27/04); 880 So.2d 87, 89, writ denied, 04-2191 (La.11/19/04); 888 So.2d 200. Spouses seeking support need not be perfect to be free from legal.fault; rather, to constitute fault which will prohibit a spouse from *467 permanent support, the spouse’s conduct must not only be of ¡a serious nature but must also be an independent contributory or proximate . cause of the separation. Matthews v. Matthews, 15 — 499 (La.App. 5 Cir. 12/23/15); 184 So.3d 173,177.
Petty quarrels between husband and wife do not rise to the level of “legal fault.” Rather, to be legally at fault, a spouse must be guilty of cruel treatment which compels separation because, the marriage is insupportable. Evans, 880 So.2d at 89.. To prove cruel treatment, a party needs to show a continued pattern of mental harassment, .nagging, and griping by one spouse directed at the other so as to make the marriage insupportable. Mere bickering and fussing do not constitute cruel treatment for purposes of denying alimony. Gilley v. Gilley, 07-568 (La.App. 5 Cir. 12/11/07); 976 So.2d 727, 728.
There is little jurisprudential guidance on how a claimant spouse proves he or she is free from fault for purposes of spousal support. In Lagars v. Lagars, 491 So.2d 5 (La.1986), the Louisiana Supreme Court held that the burden can be shifted to the non-claimant spouse to prove the claimant spouse is at fault for | purposes of precluding spousal support even when the divorce is obtained on the basis of adultery of the non-claimant spouse. However, there is no indication of how one shifts the burden when a divorce is obtained on the basis of living separate and apart for the requisite period of time. See Hutson, 908 So.2d at 1235-36.
In Hutson, the court found that the claimant spouse met her burden of proving she was free from fault through her own testimony, as well as the testimony of her niece, sister and neighbors, that she did nothing to break up the marriage and .had been a good wife. The court determined that this evidence constituted prima facie proof that the claimant spouse was not at fault in the breakup of the marriage. The court then shifted the burden to the non-claimant spouse to prove conduct on the part of the claimant spouse that rose to the level of fault. Id. at 1236.
In the present case, Melisa testified that she and Jac married in 1987 and had two children. She stated that she stopped working outside of the home within one year of being married and that she kept the house and joined philanthropic organizations. She explained " that she helped managed Jac’s rental properties ’throughout the marriage, including repairing and renovating them after Humcane Katrina. Melisa testified that she became ill in 2008 with Graves disease, which resulted in at least four surgeries. ‘She then suffered an aortic aneurism, which required open heart surgery in May 2012. Her last surgery was in July or August 2013, approximately three months before Jac served her with the divorce -papers.
Melisa stated that while she maintained the house prior to becoming ill and even for a time after she became ill, she was unable to do so after having open heart surgery in 2012.' She further- explained that she and Jac had employed several | inmaids throughout their marriage, including a live-in maid when the children were young, but the last maid left in 2011 and no new maid was hired.
Melisa testified that she and Jac did not fight during their marriage. While she admitted they had normal disagreements, she denied any “blown-out fights.” She testified that she was a good wife and took care of everything for him. She further stated that she- never denied him marital relations, a fact he confirmed. Melisa testified that,Jac seemed to grow impatient with her after she became ill. She described an incident where he refused to *468 take her to the emergency room one night, but instead made their son take her. She also stated that he never took her to her doctors’ appointments, except for one. She explained that she and Jac moved into separate bedrooms after one of her surgeries. Melisa believed that Jac divorced her because she was no longer an asset to him. She denied doing anything to break up the marriage, specifically denied having an affair, and testified that she still loved him.
We find this evidence sufficiently satisfied Melisa’s burden of proving that she was free from legal fault in the termination of the marriage. As such, the burden shifted to Jac to prove conduct on the part of Melisa that constituted legal fault. See Hutson, supra.
Jac raised two grounds in relation to potential fault on the part of Melisa: adultery and failure to maintain and clean the house.
In an attempt to prove Melisa’s infidelity, Jac submitted surveillance video of Melisa and their contractor, Alphonso Sanchez, which was taken by a private investigating firm, Deep South Investigation, hired by Jac. The video shows two surveillance dates — October 25 and 29, 2018 — one month prior to Jac filing for divorce. Footage of the October 25th surveillance showed Melisa and Mr. Sanchez having lunch together, after arriving in separate cars to the restaurant, and then Ingoing to Mr. Sanchez’s place of business, AJS Construction, in separate cars. The investigator who conducted the surveillance testified that Melisa’s car remained at Mr. Sanchez’s business at least until 9:15 p.m. that night, when the investigator terminated surveillance. And, footage from October 29th showed Melisa arriving at Mr. Sanchez’s business at approximately 11:15 a.m. and Mr. Sanchez arriving shortly thereafter. The investigator testified that both Melisa and Mr. Sanchez remained at the business until at least 2:00 p.m., when he terminated surveillance. The video surveillance showed no physical contact between Melisa and Mr. Sanchez at any time, and Jac admitted that he had no evidence that the two had engaged in sexual relations.
Melisa explained that she met Mr. Sanchez at the restaurant on October 25th to look through the newspaper for sales on tile and granite, which she was purchasing for the renovations to the rental property. She stated that when they were leaving the restaurant to go to the granite wholesaler, she spilled bleach in her car and Mr. Sanchez told her to drive it to his business so his people could clean it. Melisa offered a picture of the bleach stain into evidence. Melisa testified that she left her car at his business and caught a ride home with one of Mr. Sanchez’s employees. She further explained that on October 29th, she went to Mr. Sanchez’s office to look at paint, granite and faucets to make a decision on the renovations.'
Melisa denied having any type of romance or an affair with Mr. Sanchez. She further testified that Jac never accused her of having an affair and never discussed his suspicions with her during the marriage. Jac disputed Melisa’s claims and testified that Melisa had a previous affair with Mr. Sanchez, which she admitted at the time, but he forgave her and they reconciled. Jac also testified to various things, such as the fact he believed Melisa was working for Mr. Sanchez |12preparing his payroll and that Melisa had made loans to Mr. Sanchez, that led him to the “logical deduction” that Melisa was having an affair.
We find Jac’s “logical deduction[s]” to be speculative at best. A spouse may establish the other spouse’s adultery by indirect or circumstantial evi *469 dence, as well as by direct evidence. If circumstantial evidence alone is relied upon, then the proof must be so convincing as to exclude any other reasonable hypothesis but that of guilt of adultery. Tidwell, 152 So.3d at 1047. Absent other evidence, the fact that a man and a woman are alone together does not necessarily justify presuming that the encounter is for romantic or sexual reasons. Id. at 1048. Based on the presented evidence, we do not find that Jac proved Melisa committed adultery by a preponderance of the evidence so as to preclude her spousal support.
Jac next contends Melisa’s failure to keep or clean the house constitutes legal fault. At trial, Jac testified that he believed it was Melisa’s duty to keep the house because he worked and she did not. He stated that Melisa kept the house cluttered and failed to vacuum and sweep the floors and clean the bathrooms. He presented photographs of the home in an attempt to show its déplorable condition.
Jac admitted that he and Melisa employed several maids in the past, including a live-in maid, but stated they had no maid after 2009 when they moved back into the marital home after it had been renovated after Hurricane Katrina. He stated that Melisa did no cleaning and that he somewhat cleaned the kitchen and his master bedroom despite the fact he worked full-time. He testified that he told Melisa to hire a maid, but she said she was too busy to do so. Jac admitted that he hired a maid service in 2014 to clean the house, which was after he filed for divorce and after Melisa moved out of the home. Jac stated that Melisa’s failure to keep the house tidy and clean was a source of contention between the two.-
| lsMelisa testified that their last maid left in 2011. She'claimed that she tried to hire a new maid but no one wanted to work for them because everything in the house was broken (i.e., some of the toilets did not work, the shower and bathroom sinks were clogged). Melisa stated she had the plumbing fixed but afterwards Jac refused to pay for another maid. She further stated that after her open heart surgery in 2012 and. subsequent surgeries in-2013, she was physically unable to clean.
We do not find that Melisa’s failure to keep or clean the house constitutes legal fault so as to preclude spousal support. We are mindful that a spouse in poor health is entitled to special consideration. Allen v. Allen, 94-1090 (La.12/12/94); 648 So.2d 359, 362. The parties employed a maid for most of their marriage. For whatever reasons, when Melisa became sick and underwent surgery, the parties no longer had a maid. Although Jac did not •like the state of the house, he did nothing about it until he filed for divorce, at which time he hired a maid service on two occasions. Under these circumstances, we do not find Melisa to be. at fault for the termination of the marriage.

Contempt for Removing Furnishings

Jac next argues that the trial court erred in failing to find Melisa in contempt of court for removing furnishings from the marital home and damaging, a gate at the home.
“A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity óf the court or respect for its authority.” La. C.C.P. art. 221. There are two kinds of con-tempts of court: direct and constructive. Id. A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge. La. C.C.P. art. 222. Constructive contempt is any contempt other than |ua direct one, including the willful disobedience of any lawful judgment, or *470 der, mandate, writ or process of the court. La. C.C.P. art. 224. To find a person guilty of constructive contempt, the court must find the person violated an order of the court intentionally, knowingly and purposefully, without justifiable excuse. Short v. Short, 12-312 (La.App. 5 Cir. 11/13/12); 105 So.3d 892, 896. Contempt proceedings are designed for the vindication of the dignity of the court rather than for the benefit of a litigant. Id. at 895.
The trial court - is vested with great discretion in determining whether circumstances warrant holding a party in contempt of court. McCaffery v. McCaffery, 13-692 (La.App, 5 Cir. 4/9/14); 140 So.3d 105, 117," writ denied, 14-981 (La.6/13/14); 141 So.3d 273.
The record reflects that Jac filed a rule for contempt on. April 10, 2014, claiming Melisa , removed furnishings from the marital home and damaged a back gate while doing so. The matter was heard by the domestic hearing officer on September 23, 2014, at which time the hearing officer recommended that Jac’s rule for contempt be denied. The hearing officer reasoned there was no court order regarding the removal of items from the marital home.' He further noted that the parties disagreed as to whether the property removed was separate or community. Jac filed an objection and the matter was heard by the trial court at the same time the issue, of fault was heard.
During the hearing, Jac presented testimony that Melisa removed furnishings from the home that he inherited from his parents which was his separate property. He further submitted various photographs in an attempt to show what items Melisa removed. Conversely, Melisa testified that she only removed her separate property and half of some of the community property and placed the items in storage.
11BWhile there was a court order granting Jac exclusive use of immovable property located on Woodvine Ave., or the marital home, effective April 15, 2014, there was no court order regarding removal of furnishings from the' home when Melisa removed items on April 4, 2014. There was a court order preventing either party from alienating, encumbering, concealing or disposing of community property previously existing between the parties. However, there was conflicting testimony as to whether the property removed was separate or community. Further, the property removed has not been alienated, encumbered, concealed or disposed. Rather, the removed property was placed in a storage unit. Upon review, we do -not find the trial court abused its discretion in failing to find Melisa in contempt of court.

Contempt for Failure to Pay Spousal Support

In his last assignment of error, Jac contends the trial court erred in finding him in contempt of court for failing to pay interim spousal support because there was no rule for contempt pending against him at the time of trial. '
On August 19, 2014, Melisa filed a rule for contempt based on Jac’s alleged failure to pay interim spousal support.. When the parties came for hearing on the issue on October 22, 2014, the parties indicated they had reached an agreement regarding the arrears. Specifically, Jac agreed to pay Melisa $41,814 in interim spousal support. - The parties agreed that Jac had already paid $11,814, leaving a balance of $30,000 that he was to pay out of his IRA. The parties further agreed that their agreement completely resolved Melisa’s pending rule for contempt regarding spousal support. The trial court made the agreement a judgment of the court in open *471 court that day. A written judgment was not signed until May 22, 2015.
|1fiIn the- May 1, 2015 judgment, the trial court found Jac in contempt for failing to pay spousal support. A review of the. record shows that there was no pending rule for contempt against Jac at the time of the hearing on January 16, February 24 or March 27, 2015. Additionally, at no time during the hearing did Melisa argue for contempt or present any evidence regarding Jac’s failure to pay spousal support in accordance with the October 22, 2014 judgment. Although Melisa had filed a rule for contempt on August 19, 2014, that rule was completely satisfied by the consent judgment entered into on October 22, 2014. The record does not show that Melisa filed another rule for contempt for Jac’s failure to comply with the October 22, 2014 judgment. Thus, the issue of Jac’s failure to pay spousal support was not before the trial court during the January 16, February 24 or March’ 27, 2015 hearing. Therefore, we reverse that portion of the May 1, 2015 judgment finding Jac in contempt.

DECREE

For the foregoing reasons, we affirm that portion of the May 1, 2015 judgment denying Jac’s Rule for Contempt. Additionally, we reverse that portion of the judgment finding Jac in contempt of court for failing to pay spousal support. Further, we set aside that portion of the judgment finding that Jac failed to prove that Melisa was at fault for the breakup Of the marriage because it improperly placed the burden of proof on Jac. Upon conducting a de novo review on the issue of fault, we render judgment finding that Melisa was free from fault for the termination .of-the marriage for purposes of fingí periodic spousal support.

AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; ■RENDERED

. The petition alleged the two children born of the marriage were of the age of majority.

. We note that at the time Jac filed his motion, at least 180 days had passed as required by La. C.C. art. 103.1.

. This was a designated appellate record. According to the post-trial memos, the parties agreed to reserve the issue of final spousal support until after the trial court determined fault.