| | |
|---|---|
| WEST JEFFERSON MRI, LLC | NO. 19-CA-82 |
| | C/W |
| VERSUS | 19-CA-83 |
| | |
| JOSEPH P. LOPINTO, III, SHERIFF AND EX-OFFICIO TAX COLLECTOR OF THE PARISH OF JEFFERSON | FIFTH CIRCUIT |
| | COURT OF APPEAL |
| C/W | STATE OF LOUISIANA |
| | |
| WEST JEFFERSON CT SCAN, LLC | |
| | |
| VERSUS | |
| | |
| JOSEPH P. LOPINTO, III, SHERIFF AND EX-OFFICIO TAX COLLECTOR OF THE PARISH OF JEFFERSON | |

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 779-075 C/W 779-076, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

November 27, 2019

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and John J. Molaison, Jr.

**<u>AFFIRMED</u>**
    **MEJ**
    **RAC**

**<u>DISSENTS, IN PART, WITH REASONS</u>**
    **JJM**

COUNSEL FOR PLAINTIFF/APPELLEE,
WEST JEFFERSON MRI, LLC
Daniel A. Ranson
John J. Danna, Jr.
Ryan C. Higgins

COUNSEL FOR DEFENDANT/APPELLANT,
JOSEPH P. LOPINTO, III, SHERIFF AND EX-OFFICIO TAX COLLECTOR
OF THE PARISH OF JEFFERSON
Kenneth C. Fonte

**JOHNSON, J.**

Appellant/Defendant, Joseph P. Lopinto, III, Sheriff and Ex-Officio Tax Collector for the Parish of Jefferson, appeals the judgment in favor of Appellees/Plaintiffs, West Jefferson MRI, LLC and West Jefferson CT Scan, LLC, for the refund of certain taxes, penalties, and interest paid under protest from the 24th Judicial District Court, Division "K". For the following reasons, we affirm the judgment and deny Appellees' request for attorney's fees.

## FACTS AND PROCEDURAL HISTORY

Appellees provide diagnostic magnetic resonance imaging ("MRI") and computed tomography ("CT") services at two locations in Jefferson Parish. In early 2015, Sheriff Lopinto notified Appellees that they were being audited for failure to pay sales and use taxes. In response to the notice, Appellees' accountant, Laura Stewart, produced general ledger excerpts and asset depreciation schedules to the auditor. Sheriff Lopinto selected entries in the general ledger and requested copies of the corresponding invoices.

On November 6, 2017, Sheriff Lopinto issued formal assessments of delinquent general sales and use taxes and food and drug taxes to Appellees referencing three audits (audit numbers 98225, 98218, and 98013) covering the time period of January 1, 2012 through December 31, 2015. The majority of the delinquent sales and use taxes assessed against Appellees were for maintenance and repair services performed by third-parties on MRI and CT scan systems owned and operated by Appellees at their two locations. When calculating the taxes owed, Sheriff Lopinto assessed the sales and use taxes on a monthly basis, as if no taxes had been paid by Appellees.

Appellees paid the tax debts under protest and filed the instant lawsuits, pursuant to La. R.S. 47:337.63, to recover the amounts paid. Appellees argued that

the MRI and CT scan systems at issue are component parts of the buildings in which they are located; therefore, the units are immovable property, and the services for repairs to equipment cannot be taxed under La. R.S. 47:301. They also argued that any action to collect the taxes allegedly owed relating to the three audits at issue were prescribed under La. R.S. 47:337.67. Sheriff Lopinto filed reconventional demands in both cases, seeking a judgment for the amounts paid under protest.

The matter went to trial on October 9, 10, and 12, 2018 on the petitions for refund of taxes paid under protest and the reconventional demand. In a judgment rendered on October 26, 2018, the trial court found in favor of Appellees for certain taxes, penalties, and interest paid under protest relative to audit numbers 98225, 98218, and 98013. The trial court specifically entered judgment for any amounts paid by Appellees relating to sales and use taxes on services to their MRI and CT systems located in Jefferson Parish, taxes that were paid prior to the November 6, 2017 assessments, and taxes paid monthly on amounts not exceeding $500 for taxes levied. The trial court also entered a judgment in favor of Sheriff Lopinto against Appellees for all tax amounts paid under protest relating to monthly assessments exceeding $500 for taxes levied, excluding interest and penalties. A subsequent hearing was set for December 5, 2018 to determine the exact amounts owed by the parties.

After the December 5, 2018 hearing, the trial court rendered a written judgment on the same date. The trial court ordered Sheriff Lopinto to refund the taxes, penalties and interest paid under protest in audit number 98013 in the amount of $36,906.90; $37,364.54 in audit number 98218; and $46,910.72 in audit number 98225. The trial court then ordered Appellees to pay taxes, penalties and interest paid under protest on December 5, 2017 in the amounts of $3,842.29 for audit number 98013, $3,842.29 for audit number 98218, and $6,382 for audit

number 98225. The trial court further ordered that, pursuant to La. R.S. 47:337.80, Appellees were entitled to interest on the refunded amounts at 3.25% per annum beginning December 5, 2017—the date they made their payments under protest— through December 31, 2017, and 4% per annum beginning January 1, 2018 until paid. The trial court denied Appellees' request for attorney's fees pursuant to La. R.S. 47:337.13.1. The instant appeal followed.

**ASSIGNMENTS OF ERROR**

On appeal, Sheriff Lopinto alleges the trial court erroneously determined that the contracts for the repairs and maintenance of the two MRI systems and the CT scan system were not taxable sales of services pursuant to La. R.S. 47:301(14)(g)(i)(aa) by misclassifying all of the MRI and CT scan equipment as immovable property. Sheriff Lopinto further alleges the trial court erroneously declined to include accrued interest and penalties to the principal amount of use tax in determining whether the $500 "amount due" threshold of La. R.S. 47:337.67(D)(4) had been met to interrupt prescription for certain tax periods. In their Answer to this appeal, Appellees allege the trial court erred in failing to award them attorney's fees pursuant to La R.S. 47:337.13.1.

**LAW AND ANALYSIS**

Taxable Sales of Services

Sheriff Lopinto alleges the trial court committed a legal error in its determination that the contracts for the repairs and maintenance of the two MRI systems and the CT scan system were not taxable sales of services by basing its analysis of the tangible personal property issue on its interpretation of the 2008 version of La. C.C. art. 466, instead of the applicable 2006 version. He argues that the MRI system equipment and the CT scan system equipment are tangible personal property subject to use taxes. Sheriff Lopinto further argues that the trial court compounded its legal error by finding that the term "substantial damage to

19-CA-82 C/W 19-CA-83                    3

themselves" includes devaluation of the equipment following removal and by finding that the equipment could be declared as permanent attachments. He contends that there is no law or jurisprudence supporting economic devaluation of the removed equipment as "substantial damage" for the purpose of applying La. C.C. art. 466 in determining whether the equipment became permanently attached to a building, or supportive of a finding that when a non-structural part of an external cinder block wall—designed and constructed as a sealed doorway to serve as the means of allowing the installation or removal of an MRI magnet—is opened to remove an MRI magnet, the removal of the cinder blocks to create that opening constitutes substantial damage to the building for purposes of applying the 2006 version of La. C.C. art. 466.

Appellees maintain that the determination of whether the MRI and CT scan systems are component parts are questions of fact, not law, and the applicable standard of review is manifest error. They assert that the trial court's determination that the components of the MRI and CT scan systems were attached to their respective buildings were supported by the evidence, even when considering the 2006 version of La. C.C. art. 466, because an imaging system and all of its parts that are incorporated into a building are immovables. They contend that the mere fact that the parts at issue cannot be removed from their buildings without substantially damaging themselves or their buildings, results in such things being considered permanently attached; thus, they are component parts and are immovable.

It is well-settled that a court of appeal may not set aside a trial court or a jury's finding of fact in the absence of manifest error, or unless it is clearly wrong. *Evans v. Lungrin*, 97-541 (La. 2/6/98); 708 So.2d 731, 735. However, when a trial court applies incorrect principles of law and such errors are prejudicial, it commits legal error and the manifest error standard is no longer applicable. *Barnett v.*

*Barnett*, 15-766 (La. App. 5 Cir. 5/26/16); 193 So.3d 460, 466, citing *Evans*, *supra*. When one or more trial court legal errors interdict the fact-finding process, and the record is otherwise complete, the reviewing court must conduct a *de novo* review. *Id.*

Here, in its "Reasons for Judgment," the trial court based its rationale on the 2008 version of La. C.C. art. 466. During the December 5, 2018 hearing, the trial judge acknowledged that the reasons for judgment failed to apply the correct version of La. C.C. art. 466 to the facts of the case; yet, she did not think that it affected her analysis. There is no dispute from any party that the 2006 version of La. C.C. art. 466, not the 2008 version, is the applicable law in this matter. Therefore, because the trial court based its decision upon the wrong version of the law at issue, we will conduct a *de novo* review.

In 2006, La. C.C. art. 466 stated,

> Things permanently attached to a building or other construction are its component parts. Things such as plumbing, heating, cooling, electrical, or other installations are component parts of a building or other construction as a matter of law. Other things are considered to be permanently attached to a building or other construction if they cannot be removed without substantial damage to themselves or to the building or other construction or if, according to prevailing notions in society, they are considered to be its component parts.

At trial, William Dixon, an expert in the installation and removal of medical imaging equipment, testified on behalf of Appellees regarding the installation and removal of the systems at issue. Mr. Dixon studied images of Appellees' MRI and CT scan systems in Jefferson Parish, along with the service contracts pertaining to the equipment, and visited the sites to get a broad picture of the actions necessary to remove the machines. He explained that the MRI and CT scan machines are not just composed of the visible parts. The systems include magnets, patient tables, chiller systems, cooling systems, electrical systems, computer systems, power filter systems, exhaust systems, wiring, patient air ventilation systems, cables, pipes, and

shielding.  He stated that all of these systems are constructed into the building and tested before the visible equipment is installed.

Mr. Dixon also explained the removal process in great detail.  In order to remove an MRI system, a general contractor must coordinate with plumbers and electricians to disconnect the electrical, water, exhaust, and cooling systems.  Then, the contractor would tear down inside walls, as well as an outside wall.  The room is reduced to metal wall studs.  Once the room is deconstructed, the visible part of the machine is moved out of the area with dollies and rolled through the hole in the building to be picked up by a crane or forklift.  All walls, ceilings and floors in the room must be rebuilt.

With regard to the CT scan system, Mr. Dixon admitted that the process would be somewhat easier than removing the MRI systems.  He stated that the CT scan system is smaller, and the exterior wall would not need to be demolished.  However, the doors and door frames would have to be dismantled.  The drywall would have to be broken down on all four sides of the room to remove the lead within the wall.  When the process is complete, the room is reduced to metal studs, just like the process for removal of the MRI machines.  The machine cannot be removed without removing the lead walls because of the health hazard.

Mr. Dixon further testified that, once removed, the MRI and CT scan equipment become nothing more than a stack of parts, retaining little of their prior value.  In order to regain their value, they must be refurbished, reassembled, recalibrated and reinstalled at great expense.  The value of the equipment is substantially diminished, unless it is installed in a building with all of the necessary support systems constructed by contractors, plumbers, and electricians.  Furthermore, Mr. Dixon stated that one machine cannot be simply removed and attached to another building.  The rooms are custom built for the equipment.  When a CT scan machine is removed, the lead room does not survive, as the lead is

malleable and cannot be reused.  A new lead room must be built for that machine.

Charles Silbernagel, an expert in architecture regarding the designing of medical facilities with imaging equipment, also testified on behalf of Appellees. He explained that the designs of such facilities must include special foundation specifications, dedicated power systems, and special HVAC and shielding systems. He also testified that removal of these systems is a substantial construction project requiring a construction permit, preparation of plans and specifications by an architect and an engineer, along with employment of a general contractor.  The demolition process takes approximately two weeks, and the damage to the building is significant.

After *de novo* review, we find that the parts of the MRI and CT scan systems are component parts of the medical facilities in this matter.  The evidence presented at trial by Appellees revealed that the parts of those systems cannot be removed without substantial damage to themselves or to the building in which they are installed, and Sheriff Lopinto failed to rebut that evidence.[1]  Thus, like the trial court, we find that any costs associated with the repair and maintenance of the MRI and CT scan systems are not subject to sales and use taxes.

Interruption of Prescription

Sheriff Lopinto alleges the trial court erroneously declined to include accrued interest and penalties with the principal amount of tax owed in determining whether the $500 "amount due" threshold of La. R.S. 47:337.67(D)(4)

---

[1] We acknowledge *Hitachi Medical Systems America, Inc. v. Bridges*, 15-658 (La. App. 1 Cir. 12/9/15); 2015WL8479021 (unpublished opinion), *writ denied,* 16-42 (La. 2/26/16); 187 So.3d 1004, and find that this matter is distinguishable.  In *Hitachi*, the Louisiana First Circuit was presented with the same issue raise in this case: whether the MRIs serviced and repaired were component parts of the medical facility in which they were installed.  The First Circuit upheld the Board of Tax Appeals' decision that the MRIs in that matter were not component parts of the medical facilities in which they were installed, and thus, were movable property/tangible personal property.  *Id*. at 9.  However, the underlying factual findings made by the Board of Tax Appeals were that: the testimony established that the MRIs could be removed without substantial damage to the building in which they were housed or to the MRIs themselves; there was a market for used MRIs; the MRIs were not permanently attached to the building housing them; and there was a skylight through which the magnets of the MRIs could be removed by the use of an overhead crane. *Id*. at n.5.  The evidence presented in this matter is substantially different from the evidence presented in *Hitachi*, thus leading us to a different conclusion.

had been met to interrupt prescription for delinquent use taxes when the tax returns have not been filed. He argues that the trial court's interpretation of the "amount due" is directly at odds with both La. R.S. 47:337.69(A) and La. R.S. 47:337.70(A)(1) and (B). He contends that those statutes expressly declare that interest and penalties are part of the tax due, and are collected and accounted for in the same manner as if it were part of the underlying tax due.

Appellees argue that the evidence at trial showed that there is no tax return required by Sheriff Lopinto to report use taxes for services. They contend that Sheriff Lopinto's tax return and instructions state that use tax is only to be reported on the purchase price of goods, merchandise, and equipment used or consumed in a taxpayer's business. Appellees further argue that, even if a tax return was required to report use tax services, prescription was not interrupted because the amounts levied for each month between 2012 and 2013 were below $500.

The trial court found that, since Appellees did not file sales and use tax returns for any of the tax periods during the years 2012 and 2013, the prescriptive period did not run. However, it further found that the statute applies to the interruption only when the amount due exceeds $500 for the tax levied, and prescription was interrupted only for those monthly amounts exceeding $500 for the tax levied without interest and penalties.

La. R.S. 47:337.67 provides, in pertinent part,

A.    Sales and use taxes levied by any political subdivision shall prescribe as of three years from the thirty-first day of December of the year in which such taxes became due.

***

D.    (1) The failure to file any return required to be filed by this Chapter shall interrupt the running of prescription, and prescription shall not commence to run again until the subsequent filing of such return. Once prescription commences to run, the tax, interest, and penalty, or other charge which is reported on such return shall prescribe in three years after the thirty-first day of December of the year of the filing of the return.

***

(4) The provisions of the Subsection shall apply only to use tax returns when the amount due exceeds five hundred dollars for the tax levied.

After review, we find that a plain reading of La. R.S. 47:337.67 supports the trial court's ruling concerning the $500 threshold amount. It is clear that the provisions of suspension or interruption of prescription only apply to use tax returns when the amount exceeds $500 for the tax levied, without consideration for interests and penalties. Therefore, we do not find the trial court erred in entering judgment in favor of Sheriff Lopinto for all tax amounts paid under protest relating to monthly assessments exceeding $500 for the tax levied, excluding interest and penalties.

Attorney's fees

Appellees allege the trial court erred in failing to award them attorney's fees up to 10% of the amount of taxes, penalties and interest that were at issue, pursuant to La. R.S. 47:337.13.1. They argue that they clearly prevailed with respect to the most significant issue or set of issues presented, and they substantially prevailed as to the amount in controversy. Additionally, they argue that Sheriff Lopinto's position was not substantially justified because he did not have a reasonable basis in law and fact. As such, Appellees contend they are entitled to attorney's fees.

According to La. R.S. 47:337.13.1(B)(1),

Except as otherwise provided for in Paragraph (A)(3) of this Section, the prevailing party in a dispute, contest, or other controversy involving the determination of sales and use tax due shall be entitled to reimbursement of attorney fees and costs, not to exceed ten percent of the taxes, penalties, and interest at issue, unless the position of the non-prevailing party is substantially justified. The prevailing party is defined as the party which has substantially prevailed with respect to the amount in controversy or substantially prevailed with respect to the most significant issue or set of issues presented. A position is substantially justified if it has a reasonable basis in law and fact. The reimbursement amount for attorney fees and costs shall be subject to the discretion of the court or Board of Tax Appeals as to

reasonableness.

Here, the trial court denied Appellees' request for attorney's fees. In its denial, the trial court inherently found that Sheriff Lopinto's position was substantially justified, despite the fact that it ruled against him. We decline to disturb the trial court's ruling.

## DECREE

For the foregoing reasons, we affirm the judgment of the trial court. The parties are to each bear their costs for this appeal.

**<u>AFFIRMED</u>**

| WEST JEFFERSON MRI, LLC | NO. 19-CA-82 C/W 19-CA-83 |
|---|---|
| VERSUS | FIFTH CIRCUIT |
| JOSEPH P. LOPINTO, III, SHERIFF AND EX-OFFICIO TAX COLLECTOR OF THE PARISH OF JEFFERSON | COURT OF APPEAL |
| | STATE OF LOUISIANA |
| C/W | |
| WEST JEFFERSON CT SCAN, LLC | |
| VERSUS | |
| JOSEPH P. LOPINTO, III, SHERIFF AND EX-OFFICIO TAX COLLECTOR OF THE PARISH OF JEFFERSON | |

## MOLAISON, J., DISSENTS, IN PART, WITH REASONS

I respectfully dissent from portion of the majority's opinion affirming the trial court's finding that MRI and CT scanning machines are immovable devices for the purpose of determining whether service contract charges for the repair of that equipment is taxable.

In *Hitachi Med. Sys. Am., Inc. v. Bridges*, 15-0658 (La. App. 1 Cir. 12/9/15), *writ denied*, 16-0042 (La. 2/26/16), 187 So.3d 1004, the First Circuit concluded that an MRI machine was not an immovable, based upon specific criteria. Among the considerations were the facts that "MRIs were not permanently attached to the building; were not plumbing, heating, cooling, electrical or other installations; and were not permanently attached so as to cause substantial damage to either the MRIs or building if removed."

In the instant matter, the record demonstrates that the equipment at issue meets the same criteria detailed in *Hitachi, supra*. Testimony at trial established

that nearly all of the various components of the MRI and CT setups could be disassembled without damage and then re-sold. In instances where parts of the rooms housing the units needed to be opened to remove equipment, plans to accomplish this were included when the rooms were constructed. This supports the conclusion that the units were not permanently affixed to the hospital buildings. I do not find, as suggested by the majority, that *Hitachi* is distinguishable on its facts.

Accordingly, I would reverse the trial court's ruling that West Jeff MRI, LLC and West Jeff CT Scan, LLC were entitled to a refund for taxes paid on services to those systems.

In all other respects, I join in the majority opinion in affirming the trial court's judgment.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**NOVEMBER 27, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL
PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 19-CA-82

### C/W 19-CA-83

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
DANIEL A. RANSON (APPELLEE)        KENNETH C. FONTE (APPELLANT)        JOHN J. DANNA, JR. (APPELLEE)
RYAN C. HIGGINS (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED